## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **WILLIAM A. LEMONS**, **JR.,** | ) | |
| **M.D.,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:18-CV-01040-CLM** |
| | ) | |
| **PRINCIPAL LIFE INSURANCE** | ) | |
| **COMPANY,** | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff William A. Lemons, Jr., sues Principal Life Insurance Company ("Principal"), alleging that he was entitled to insurance benefits after hand tremors rendered him disabled from his job as an OB/GYN. The parties have cross moved for summary judgment, *see* docs. 65 & 69, and they seek to strike several evidentiary submissions from the court's consideration. *See* Docs. 76, 102, 103, 105, 106.

For the reasons explained within, the court will **DENY** Lemons' motion for summary judgment (doc. 65) and **GRANT in PART** and **DENY in PART** Principal's motion for summary judgment (doc. 69). The court will **DENY as MOOT** the motions to exclude the testimony of Michael Wallace, Laura Parker, and Elliott Flood (docs. 76, 102, 105); the court will **GRANT** Principal's motion to exclude the testimony of R. Bernard Harwood (doc. 103); and, the court will **DENY**

**in PART** and **DENY as MOOT in PART** Principal's motion to strike Lemons'

declarations (doc. 106). The court will try Lemons' breach of contract claim.

## BACKGROUND

Soon after completing his OB/GYN residency, Lemons bought a disability

policy from Principal. The policy includes a regular occupation rider, which

provides benefits when an insured is totally disabled from his regular occupation.

According to the regular occupation rider, total disability from your regular

occupation means:

1.     Solely due to an injury or Sickness you are unable to perform the
       substantial and material duties of your regular occupation in
       which you were engaged just prior to the Disability;

2.     You are receiving care from a Doctor which is appropriate for
       the condition causing your Disability[.]

3.     You are engaged in another occupation.

Doc. 66-41 at 2.

Lemons' disability policy also included a benefit update rider. Principal

marketed this rider as allowing policyowners to increase their policy benefits every

three years. The benefit update rider report created for Lemons when he bought the

Principal policy included a chart that showed his benefits increasing to $15,000 a

month. But in 2007 and 2010 Principal denied Lemons' benefit update requests,

writing in the denial letters that he was "fully insured for the maximum benefit

amount." Doc. 66-10 at 2–3. According to Principal, it denied these benefit update requests because Lemons' policy capped his monthly benefits at $10,000.

From 2008 to 2015, Lemons worked as an OB/GYN for Trinity Hospital. But in August 2015 Trinity terminated Lemons' employment. The next month, Lemons began work as a claims consultant for Blue Cross/Blue Shield. In January 2016, Lemons began work as an addiction counselor for Birmingham Metro Clinic, and he later began counseling patients suffering from opioid-dependence at the Fritz clinic.

Around this same time, Lemons began taking the steps necessary to open his own medical practice. And in early April 2016, Lemons began seeing his first patients at Covenant Gynecology & Wellness clinic. Lemons' practice at Covenant focused on gynecology and gynecological surgery. But Lemons closed Covenant before re-establishing his obstetrics practice.

According to Lemons, he had to close Covenant because he developed hand tremors. So Lemons filed a disability claim with Principal, citing June 15, 2016 (the date Covenant closed) as his disability onset date. After investigating Lemons' claim, Principal approved his claim under the policy's loss of earnings provision but denied his claim under the regular occupation rider. Principal's denial letter stated that it denied Lemons benefits under the regular occupation rider because he continued to work at Blue Cross, Birmingham Metro, and Fritz and thus was "not

totally disabled from all occupations that [he was] engaged in just prior to Disability." Doc. 72-5 at 122.

Lemons then requested that Principal reconsider its denial of his claim under the regular occupation rider. Principal responded by telling Lemons that "[a]t [t]his time, we have not received any information that changes our original decision as outlined in our letter . . . ." Doc. 72-5 at 28. Lemons then obtained counsel who sent a demand letter to Principal, asking that Principal pay Lemons full benefits under the regular occupation rider. Principal responded to Lemons' attorney by stating that it upheld its regular occupation rider determination because "Dr. Lemons does not meet the contractual definition of Regular Occupation Rider under the terms of his policy." *See* Doc. 72-4 at 80. Soon after his attorney received this letter, Lemons sued Principal.

## **STANDARD**

In considering cross-motions for summary judgment, the court views the facts "in the light most favorable to the non-moving party on each motion." *See Chavez v. Mercantil Commercebank, N.A.*, 701 F.3d 896, 899 (11th Cir. 2012). Summary judgment is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable

jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## ANALYSIS

The parties cross move for summary judgment on three distinct claims: (1) breach of contract related to the regular occupation rider; (2) bad-faith insurance; and, (3) breach of contract related to the benefit update rider. Before addressing the merits of the summary judgment motions, the court will rule on the motions to strike.

## I.    Motions to Strike

### A.    Wallace, Parker, and Flood's Testimony

The court first addresses the motions to strike Wallace, Parker, and Flood's testimony. Docs. 76, 102, 105. Lemons asserts that Wallace, who is the assistant technical director of Principal's individual disability claims department, lacks personal knowledge of much of the information provided in his declaration and that the declaration is an end-run around this court's page limitation requirements for summary judgment briefs. *See* Doc. 76. And Principal objects to the testimony of Parker and Flood, two of Lemons' designated experts, as being neither reliable nor helpful. *See* Docs. 102 & 105. Even if this court were to consider the testimony of Wallace, Parker, and Flood, it would not change the result of this opinion. Thus, the motions to strike their testimony (docs. 76, 102, 105) will be **denied as moot.**

### B.      Harwood's Testimony

The court next addresses Principal's motion to strike Harwood's testimony about how to interpret the regular occupation rider. *See* Doc. 103. R. Bernard Harwood is a retired Justice of the Alabama Supreme Court.  According to Principal, Justice Harwood's testimony is improper because "it is the exclusive province of this Court to resolve questions of law." *See id.* at 3. The court agrees. An expert may testify about his opinion on "a fact in issue." *See* FED. R. EVID. 702. But an expert's testimony may not make legal conclusions. *See Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990).

Justice Harwood's expert report essentially states that: (1) under the plain meaning of the regular occupation rider Lemons' regular occupation was that of an OB/GYN, and (2) that Principal acted in bad faith because it used an ambiguity in the regular occupation rider to deny Lemons' claim for total disability. *See* Doc. 103-1. Both statements include legal conclusions that fall outside the scope of proper expert testimony. *See Nunnelley v. GE Capital Info. Tech. Solutions-North America*, 730 So. 2d 238, 241 (Ala. Civ. Appl. 1999) ("Whether a contract is ambiguous is a question of law for the trial judge."). So the court will **grant** Principal's motion to strike Justice Harwood's testimony (doc. 103).

### C.    Lemons' Declarations

Finally, Principal moves to strike portions of Lemons' declarations as sham affidavits. *See* Doc. 106. "A court may determine that an affidavit is a sham when it contradicts previous deposition testimony and the party submitting the affidavit does not give any valid explanation for the contradiction." *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1237 (11th Cir. 2010). But courts should apply the sham affidavit rule "sparingly" and "must find some inherent inconsistency between an affidavit and a deposition before disregarding the affidavit." *Id.* (internal quotations and citations omitted).

Principal asserts that the statement in Lemons' declarations that he worked "[a]s the only OB/GYN at Covenant" is inherently inconsistent with his deposition testimony that his work at Covenant exclusively focused on gynecology and not obstetrics. Principal also objects to Lemons' statement that "it is impossible for anyone to pinpoint any particular day as being the date of disability, but it would definitely be earlier than the date used under any reasonable estimation," doc. 66-27 at 2, contending that this statement contradicts Lemons' earlier testimony that he was not disabled until well after March 2016. Having reviewed these statements and Lemons' deposition testimony, the court finds that Lemons' statements are not inherently inconsistent with his previous testimony. So the court will **deny** Principal's motion to strike these statements from Lemons' declarations.

And none of Lemons' other testimony objected to by Principal is relevant to the court's consideration of the parties' cross motions for summary judgment. So the court will **deny as moot** the rest of Principal's motion to strike statements made in Lemons' declarations. If Principal believes that Lemons has made inconsistent statements under oath, it may use those inconsistencies to impeach him at trial.

\* \* \*

In summary, the court will **deny as moot** the motions to strike Wallace, Parker, and Flood's testimony (docs. 76, 102, 105). The court will **grant** Principal's motion to strike Justice Harwood's testimony (doc. 103). And the court will **deny in part** and **deny as moot in part** Principal's motion to strike statements from Lemons' declarations (doc. 106).

## II.   Motions for Summary Judgment

Having resolved the motions to strike, the court turns to the merits of the parties' cross motions for summary judgment.

### A.   Regular Occupation Rider

The court starts with Lemons' allegation that Principal breached the insurance policy by denying his claim for regular occupation rider benefits. Applying Alabama law to an insurance policy dispute, this court "gives words in the policy their common, everyday meaning and interprets them as a reasonable person in the

insured's position would have understood them." *See State Farm Mut. Auto Ins. Co. v. Brown*, 26 So. 3d 1167, 1169 (Ala. 2009).

1. <u>Plain meaning of regular occupation</u>: The first prong of the regular occupation rider defines total disability to mean that "[s]olely due to Injury or Sickness you are unable to perform the substantial and material duties of your regular occupation in which you were engaged just prior to the Disability." Doc. 66-41 at 2. Principal interprets this provision as requiring an insured to show that he is no longer able to complete most job duties that he had in the timeframe immediately proceeding his claimed date of disability. But Lemons interprets this provision as requiring him to show only that he could no longer perform the duties of his OB/GYN specialty.

Applying Georgia law to a similar disability policy, the Eleventh Circuit interpreted "regular occupation" to mean an insured's customary occupation when he became disabled. *See Giddens v. Equitable Life Assurance Soc'y of the U.S.*, 445 F.3d 1286, 1292 (11th Cir. 2006). The Court then held that defining regular occupation as "the occupation . . . in which you are regularly engaged . . . at the time you become disabled" did not allow the insured to recover total disability for any occupation he had had over the course of his life. *See id.* at 1292 (emphasis omitted). Instead, the policy required the insured to show that he was totally disabled from an occupation he was involved in at the time of his disability. *See id.* at 1292–93.

Lemons' regular occupation rider, which refers to the "regular occupation in which you were engaged just prior to the Disability," doc. 66-41 at 2, similarly requires Lemons to show that he worked in his asserted regular occupation right before his disability onset date. Thus, the court agrees with Principal that for OB/GYN to count as Lemons' regular occupation, Lemons must have worked as an OB/GYN in the weeks before he became disabled.

But the court rejects Principal's argument that the regular occupation rider should be interpreted as allowing an insured to have multiple regular occupations. Alabama law defines occupation as "that which occupies or engages the time or attention; the principal business of one's life; vocation; employment; calling; trade." *See Sovereign Camp, W.O.W. v. Craft*, 94 So. 831, 833 (Ala. 1922); *see also Occupation*, BLACK'S LAW DICTIONARY (10th ed. 2014) (defining occupation as "a person's usual or principal work or business"). And the ordinary meaning of the term regular is "[c]ustomary, usual, or normal." *See Giddens*, 445 F.3d at 1292 (citing American Heritage Dictionary of the English Language (4th ed. 2000) at 1471). So the phrase "regular occupation" does not refer to all of an insured's economic activity. Instead, the most natural reading of regular occupation is that the term refers to an insured's primary job or discipline. And the court reads the regular occupation rider's use of the singular "your regular occupation" to mean that the policy contemplates that the insured has only one primary job.

Because the court reads the regular occupation rider as referring to only one regular occupation, the court disagrees with Principal's contention that the regular occupation rider requires Lemons to show that he is unable to perform the substantial and material duties of ***all*** jobs he had when he became disabled. Instead, the court interprets the regular occupation rider as requiring Lemons to show only that he is unable to perform the substantial and material duties of his primary occupation. And the court determines that Lemons can satisfy the third prong of the regular occupation rider, which requires him to establish that he is engaged in another occupation, by simply showing that he is now working in a job other than the job that was his prior regular occupation. The policy does not require Lemons to show that he has stopped working at every job he worked at just before becoming disabled.

In short, the court interprets the regular occupation rider as requiring Lemons to establish that (1) he can no longer perform the substantial and material duties of the primary job he had right before becoming disabled and (2) he now works in a position different from his previous primary job.

2. <u>Lemons' occupation</u>: The court finds that a reasonable juror could go either way on Lemons' primary occupation when he became disabled. Lemons argues that his regular occupation was OB/GYN. But when the evidence is viewed in the light most favorable to Principal, a reasonable juror could disagree. As Principal notes, Lemons spent much time working at Blue Cross, Birmingham Metro, and Fritz in

the months before he became disabled. And Lemons decided to forgo a salary at Covenant, so he derived his income from his work outside his gynecology practice.

But viewing the evidence in the light most favorable to Lemons, a reasonable juror could find that his regular occupation was his gynecological work at Covenant. Lemons testified that when Covenant was open he spent more hours working there than he did working at his other jobs. And Lemons invested at least $35,000 in establishing his practice at Covenant. This evidence suggests that Lemons' primary focus in the months preceding his disability was on his gynecology practice. So the court finds that there is a genuine dispute of material fact about whether—when Lemons became disabled—Lemons' regular occupation was his job at Covenant.

3. Substantial and material duties: Assuming that Lemons' primary job was his work at Covenant, the court must finally consider whether Lemons' hand tremors prevented him from performing the substantial and material duties of that work. Because the regular occupation rider does not identify the percentage of duties Lemons must be unable to perform to receive total disability benefits, the court determines that the "substantial and material duties" language in the disability policy is ambiguous. *See id.* at 1298. As explained by the Eleventh Circuit when construing similar language, a reasonable person could interpret the "substantial and material duties" provision as requiring Lemons to be unable to perform all the material duties of his job at Covenant. *See id.* But it is also reasonable to interpret the disability

policy as only requiring that Lemons be unable to perform most—or at least the majority of—his duties at Covenant. *See id.*

Ambiguous insurance policies are to "be construed liberally in respect to persons insured and strictly with respect to the insurer." *State Farm Mut. Ins. Co. v. Brown*, 26 So. 3d 1167, 1169–70 (Ala. 2009). So the court determines that Lemons will be able to establish total disability if he shows that he is no longer able to perform the majority of his substantial and material duties at Covenant. And the court finds that a reasonable juror could go either way on this question.

Viewing the evidence in the light most favorable to Principal, Lemons will be unable to make this showing. Lemons testified that did not engage in obstetrics while at Covenant and many of his tasks at Covenant were administrative. What's more, the evidence suggests that Lemons performed much more minor surgical tasks at Covenant than he did at Trinity. So a reasonable jury could find that Lemons' hand tremors did not preclude him from performing the majority of his substantial and material duties at Covenant.

But a reasonable jury could also find that Lemons' hand tremors rendered him totally disabled from performing the material duties of his work at Covenant. Nicole Pleasant, a former nurse at Covenant, testified that when Lemons worked at Covenant, he offered all standard OB/GYN procedures except for the delivery of babies. Lemons testified that these procedures included performing hysteroscopies,

a minor surgical procedure. To be sure, Lemons did not perform intensive gynecological surgeries at Covenant. But when Covenant denied Lemons' request for regular occupation benefits it determined that Lemons' disability meant that he "would no longer be able to work . . . as an OB/Gyn," doc. 66-25 at 3, not that his hand tremors would just prevent him from performing OB/GYN surgery. Because it is at least arguable that Lemons' work at Covenant was that of the typical OB/GYN, the court finds that a question of fact exists as to whether Lemons' hand tremors prevented him from performing the substantial and material duties of his work at Covenant. So a jury must decide whether Principal owes Lemons total disability benefits under the regular occupation rider. The court will thus **deny** both parties' motions for summary judgment on the breach of contract claim related to the regular occupation rider.

### B.    Bad-Faith Insurance

The court next turns to Lemons' bad-faith insurance claim. Under Alabama law, a plaintiff can present a case of either normal or abnormal bad-faith insurance. *See White v. State Farm Fire & Cas. Co.*, 953 So. 2d 340, 349 (Ala. 2006). "In the normal bad-faith case, the plaintiff must show the absence of any reasonably legitimate or arguable reason for denial of a claim." *See id.* "An insurer is liable for 'abnormal' bad faith when it intentionally or recklessly fails to conduct an adequate investigation of the facts and submit those facts to a thorough review." *Mut. Serv.*

14

*Cas. Ins. Co. v. Henderson*, 368 F.3d 1309, 1315 (11th Cir. 2004). Lemons argues that he can establish both normal and abnormal bad faith. The court disagrees.

1. Normal bad faith: The elements of a normal bad-faith claim are (1) an insurance contract between the parties that the defendant breached; (2) an intentional refusal to pay the insured's claim; (3) the lack of any reasonably legitimate or arguable reason for that refusal (*i.e.*, the lack of a debatable reason); and (4) the insurer's actual knowledge of the lack of any legitimate or arguable reason. *Nat'l Sec. Fire & Cas. Co. v. Bowen*, 417 So. 2d 179, 183 (Ala. 1982). "For a 'normal' bad-faith claim to be submitted to the jury, the underlying contract claim must be so strong that the plaintiff would be entitled to a preverdict judgment as a matter of law." *See Jones v. Alfa Mut. Ins. Co.*, 1 So. 3d 23, 32 (Ala. 2008).

As explained above, questions of material fact exist as to whether Lemons' hand tremors prevented him from performing the substantial and material duties of his job at Covenant. And it is at least debatable that Lemons' regular occupation at the time of his disability was not that of an OB/GYN. So the court will **deny** Lemons' motion for summary judgment on his normal bad-faith claim and **grant** Principal's motion for summary judgment on this claim.

2. Abnormal bad faith: A plaintiff can succeed in an abnormal bad-faith case by showing (1) an intentional or reckless failure to investigate a claim, (2) intentional or reckless failure to properly subject a claim to a cognitive evaluation or review, (3)

the manufacture of a debatable reason to deny a claim, or (4) reliance on an ambiguous portion of a policy as a lawful basis for denying a claim. *See White*, 953 So. 2d at 349. But "[r]egardless of the imperfections of [the insurer's] investigation, the existence of a debatable reason for denying the claim at the time the claim was denied defeats a bad faith failure to pay the claim." *State Farm Fire & Cas. Co. v. Brechbill*, 144 So. 3d 248, 259 (Ala. 2013) (emphasis omitted).

When Principal first denied Lemons' request for total disability benefits, it knew from its investigation into his claims that: (1) Lemons was not performing major surgeries at Covenant; (2) besides his work at Covenant, Lemons had been working at Blue Cross, Birmingham Metro, and Fritz; and (3) Lemons earned no income from his work at Covenant. So Principal had an arguable reason for denying Lemons' claim—*i.e.,* his regular occupation may have been something other than an OB/GYN at Covenant. And although relying on an ambiguous policy provision to deny coverage constitutes bad faith, *see White*, 953 So. 2d at 349, the debatable reason for denying Lemons' total disability claim is not a product of ambiguities within the regular occupation rider. Instead, there is a debate over whether Principal owes Lemons total disability benefits because it is unclear what Lemons' primary job was when he became disabled. So the court will **deny** Lemons' motion for summary judgment on his abnormal bad-faith claim and **grant** Principal's motion for summary judgment on this claim.

16

### C.     Benefit Update Rider

The court finally turns to Lemons' argument that Principal's capping of the benefit update rider breached his insurance contract. This rider allows an insured to increase his maximum monthly benefits every three years. According to Lemons, when Principal sold him the benefit update rider, it told him that there would be no cap on coverage and showed him a chart of his monthly benefits increasing to $15,000 a month. But when Lemons requested benefit updates in 2007 and 2010, Principal denied Lemons' requests because Principal had capped Lemons' maximum monthly benefits at $10,000. Thus, Lemons argues Principal breached its agreement to not cap his benefits. This argument fails for at least two reasons.

First, Lemons never mentioned the benefit update rider in his amended complaint. *See* Doc. 15. Instead, his breach of contract claims focused on the denial of his total disability claim under the regular occupation rider. *See id.* And a plaintiff cannot amend his complaint through arguments made at the summary judgment stage. *See Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 859 (11th Cir. 2020). So Lemons' breach of contract claim related to the benefit update rider is not properly before the court.

Second, Lemons' claim related to the benefit update rider concerns Principal's failure to increase his maximum monthly benefits in 2007 and 2010. So when

Lemons sued Principal in 2018, the six-year statute of limitations on his breach of contract claims related to the benefit update rider had run. *See* Ala. Code § 6-2-34(9).

And Lemons has failed to show that Principal fraudulently concealed his claims related to the benefit update rider. *See Dodd v. Consolidated Forest Prods., LLC*, 192 So. 3d 409, 412 (Ala. Civ. App. 2015) (noting "the statute of limitations on tort and breach-of-contract claims" are equitably tolled "when the defendant has fraudulently concealed from the plaintiff his or her cause of action"). Instead, Principal informed Lemons in both 2007 and 2010 that his request for benefit updates was being denied because he was "currently fully insured for the maximum benefit amount." Doc. 66-10 at 2–3. The court determines that, as a matter of law, these statements would have "provoke[d] inquiry in the mind of a [person] of reasonable prudence" as to whether Principal had capped Lemons' maximum monthly benefits. *See Auto-Owners Ins. Co. v. Abston*, 822 So. 2d 1187, 1195 (Ala. 2001). As a result, the doctrine of fraudulent concealment did not equitably toll the statute of limitations on the breach of contract claims related to the benefit update rider. *See id.* at 1195–96. So the court will **dismiss** Lemons' claims related to the benefit update rider.

## <u>CONCLUSION</u>

For these reasons, the court will **DENY** Lemons' motion for summary judgment (doc. 65) and **GRANT in PART** and **DENY in PART** Principal's motion for summary judgment (doc. 69). The court will **DENY as MOOT** the motions to exclude the testimony of Michael Wallace, Laura Parker, and Elliott Flood (docs. 76, 102, 105). The court will **GRANT** Principal's motion to exclude the testimony of R. Bernard Harwood (doc. 103). And the court will **DENY in PART** and **DENY as MOOT in PART** Principal's motion to strike Lemons' declarations (doc. 106).

By separate order, the court will carry out these findings and set a telephone status conference to discuss pretrial conference and trial dates.

**DONE** this October 26, 2020.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE