IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| WILLIAM A. LEMONS, JR. M.D.,       )<br>    Plaintiff,                                       )<br>v.                                                       )<br>                                                         )      **CIVIL ACTION NO. 2:18-CV-**<br>PRINCIPAL LIFE INSURANCE   )      **1040-CLM**<br>COMPANY,                                     )<br>                                                         )<br>    Defendant.                                   ) | |

**PRINCIPAL LIFE INSURANCE COMPANY'S
MOTION TO EXCLUDE TESTIMONY OF LAURA B. PARKER**

Defendant Principal Life Insurance Company ("Principal Life"), by and through its counsel, respectfully moves this Court to exercise its "gatekeeping" function to exclude the expert opinions and testimony of Plaintiff's expert witness, Laura B. Parker as to any matters in this case.

**INTRODUCTION**

Plaintiff has identified Laura B. Parker ("Parker") on his witness list, and apparently intends to offer Parker's testimony in an attempt to demonstrate that Principal Life generally violated "industry standards." Parker's opinions are premised on a set of model rules, which have not been adopted by Alabama to govern insurance companies. Parker's opinions are based on her supposition as to the following alleged model rule violations: (1) Principal Life used "pre-conceived opinions and determinations;" (2) Principal Life "misstated facts" and failed to advise Plaintiff of the reasons for its denial of benefits under the Policy's Regular

Occupation Rider ("RO Rider"); (3) Principal Life applied terms that are not contained in the Policy; (4) Principal Life placed its monetary interests above Plaintiff's interests; (5) Principal Life wrongfully allowed Douglas Hanselman to approve Plaintiff's claim for benefits under the Policy's "Loss of Earnings" provision; and (6) Principal Life wrongfully disregarded a "2-person decision-making system." *See* Report of L. Parker, attached hereto as Exhibit A ("Ex. A") at 28.

Based on the applicable evidentiary standards, Parker's opinions and testimony should be excluded because she is not qualified to testify concerning the two substantive matters at issue in the case: (1) whether Principal Life breached the Policy in denying Plaintiff's claim for RO Rider benefits under Alabama law; and (2) whether Principal Life's evaluation of Plaintiff's claim and claims determination under the RO Rider to the Policy were in bad faith based on Alabama law. As explained below, Parker has no special knowledge, training, or experience as to Alabama's standards applicable to disability insurance claims, and has not handled an insurance claim similar to the one at issue in over two decades.

Moreover, Parker's testimony as to "industry standards" or the standard of care and Principal Life's alleged violation of those standards is not relevant based on applicable Alabama law regarding bad faith claims. Even assuming Plaintiff can demonstrate Parker is qualified to proffer her opinions on alleged violations of

"industry standards," such opinions confuse the issues, are not helpful to the trier of fact, and constitute impermissible legal opinions. When Parker's legal opinions are excluded, her opinions are reduced to a biased summary of the evidence, and her speculation as to the parties' subjective motivation and intent. This sort of advocacy is not a proper subject of expert opinion testimony, and is therefore inadmissible.

## STANDARD FOR ADMITTING EXPERT TESTIMONY

As the party offering Parker as an expert, Plaintiff bears the burden of proving that her testimony is admissible as expert testimony. *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010) ("The burden of laying the proper foundation for the admission of expert testimony is on the party offering the expert, and the admissibility must be shown by a preponderance of the evidence." (quoting *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002))). Federal Rule of Evidence 702 governs the use of expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Expert opinion testimony is admissible only insofar as it assists the trier of fact to resolve a fact in issue. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993). "Proffered expert testimony generally will *not* help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *United States v. Frazier*, 387 F.3d 1244, 1262-63 (11th Cir. 2004) (emphasis added). An expert may not, therefore, "merely tell the jury what result to reach . . . [or] testify to the legal implications of conduct; the court must be the jury's only source of law." *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) (citations omitted). Accordingly, a bare legal conclusion is not admissible as expert opinion testimony. *Id.* Moreover, **expert testimony that is based on an erroneous legal standard** is unhelpful to the jury and, therefore, not relevant. *Williamson Oil Co. v. Philip Morris USA,* 346 F.3d 1287, 1322, 1323 (11th Cir. 2003).

## APPLICABLE ALABAMA LAW ON BAD FAITH

In evaluating the admissibility of Parker's testimony under the above standard, it is critical to focus on the Alabama bad faith law applicable in this case. Alabama law recognizes a single tort of bad faith in the insurance context with two methods of proof: "where there is either (1) no lawful basis for the refusal coupled with actual knowledge of that fact or (2) intentional failure to determine whether or not there was any lawful basis for such refusal." *State Farm Fire & Cas. Co. v. Brechbill*, 144

So. 3d 248, 257 (Ala. 2013) (internal citations omitted). A bad faith claim involving the insurer's refusal to pay benefits requires proof of "(a) a breach of insurance contract, (b) the refusal to pay claim, (c) the absence of arguable reason, [and] (d) the insurer's knowledge of such absence . . . ." *Id.* at 258. A bad faith claim involving the insurer's failure to investigate requires proof of a conditional fifth element—"the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim." *Id.* (quoting *Nat'l Sec. Fire & Cas. Co. v. Bowen*, 417 So. 2d 179, 183 (Ala. 1982)).

"Regardless of whether the claim is a bad-faith refusal to pay or a bad-faith refusal to investigate, the tort of bad faith requires proof of the third element, absence of legitimate reason for denial . . . ." *Brechbill*, 144 So. 3d at 258. Thus, all that is required for the insurer to avoid bad faith liability is "a legitimate or arguable reason for refusing to pay [the insured]'s claim." *Id.* at 257 (citations omitted). In addition, under Alabama law, *more than bad judgment or negligence is required* for bad faith and a *plaintiff must provide sufficient evidence of "dishonest purpose"* or breach of a known duty, *i.e.* good faith and fair dealing, through a motive of self-interest or ill will. *Id.* at 259-260 (emphasis added).

## ARGUMENT

### I. Parker is not qualified as an individual disability insurance expert.

Parker provides extensive opinions about whether, when denying additional benefits under the Policy's RO Rider, Principal Life acted in bad faith or otherwise broke applicable laws and breached industry standards. To be admissible, Parker's opinion must have "a reliable basis in the knowledge and experience of the relevant discipline." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999). Where an expert witness, like Parker, relies "primarily on experience . . . [she] must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *United States v. Medina-Copete*, 757 F.3d 1092, 1104 (10th Cir. 2014) (quotation marks omitted). Parker's testimony fails this test. *See* Fed. R. Evid. 702 advisory committee's note (2000 Amendment) ("The more subjective and controversial the expert's inquiry, the more likely the testimony should be excluded as unreliable.").

As the sole basis for demonstrating her alleged qualification as an expert on the subject matter in this case, Parker will attempt to rely on her remote experience working for companies in the insurance industry. See Dep. of L. Parker, attached hereto as Exhibit B ("Ex. B") at 60:15-20, 64:21-65:1. Because the foundation for Parker's purported expertise is rooted only in her remote "experience, [her] designations, the licenses that [she has] the law requires, [and] continuing education and exams," she is not equipped to be an expert in this case. *Id*. at 61:12-15. As one

court explained, "an expert basing his opinion solely on experience must do more than aver conclusorily that his experience led to his opinion . . . ." *Lippe v. Bairnco Corp.*, 288 B.R. 678, 686 (S.D.N.Y. 2003). Here, Parker has failed to do so.

Generalized experience in the insurance industry is often insufficient to qualify as an expert on a particular insurance dispute, such as at issue here with respect to Plaintiff's claim for "Regular Occupation" Rider ("RO Rider") benefits. *See Shamalon Bird Farm, Ltd. v. Fidelity & Guar Co.*, 111 N.M. 713, 715 (N.M. 1991) (explaining that although the proposed expert had "worked as an insurance adjuster for a number of years, he never had handled a business interruption claim of any substance" and was therefore unqualified on the particular topic). Parker has limited experience with similar RO Riders, and could recall handling claims under a similar rider in just one of her former positions—her position with Unum. Ex. A at 41; Ex. B at 21:13-18, 22:6-20. Parker has not worked for Unum since April 2000, and thus has not worked on a similar individual disability insurance claim in **more than twenty-one years**. Plaintiff cannot demonstrate how this remote experience qualifies Parker to serve as an expert on proper disability claims handling and proper evaluation of similar RO Rider claims.

Despite conceding that Alabama insurance law and regulations govern Principal Life's conduct with respect to Plaintiff's claim for benefits, Parker admits that her opinions are not guided by applicable Alabama law. *See* Ex. A at 16; Ex. B

at 59:10-16, 60:15-20. When asked, Parker revealingly could not identify the actual standards governing disability insurance in Alabama other than her vague statement that Alabama "is like other states" that require "fair claims handling practices." Ex. B. at 58:23-60:14. Despite her admission that she is "not familiar with Alabama's underwriting procedures [or] laws," Parker nevertheless attempts to instruct the jury on whether Principal Life's conduct violated "state claims handling procedures." Ex. A; Ex. B at 60:18-20, 64:6-7. However, in light of Parker's own admissions, Plaintiff cannot demonstrate that Parker is somehow qualified to present expert testimony bearing on Principal Life's potential liability under Alabama bad faith law. And offering testimony about subjects which are plainly outside of Parker's area of expertise makes her testimony inadmissible under Federal Rule of Evidence 702.

## II.     Parker is not qualified as a vocational expert.

Parker attempts to offer a purportedly expert appraisal of Principal Life's vocational analysis in evaluating Plaintiff's claim under the RO Rider. Ex. A at 23; Ex. B at 92:20-93:23, 95:3-10. However, Parker is not a vocational expert, and admits that she never undertook a vocational consultant or specialist role in her prior experience working for insurance companies. Ex. B at 22:21-23:1. Given that Parker has no qualifications as a vocational expert or consultant, her opinions concerning Principal Life's vocational evaluation should be excluded.

## III.    Parker's testimony is not helpful, and will confuse the issues.

Parker lacks expertise on Alabama insurance law and Alabama's specific standards on claims handling practices, and instead testifies about what she describes as general "industry standards." *See* Ex. A at 39; Ex. B 84:17-85:12. She couches her opinions in terms of the NAIC Model Unfair Claims Practices Act, which she describes as setting forth "best practices and standards" for insurance claims handling. Ex. A at 19. However, whether Principal Life complied with industry standards or whether its claims handling was reasonable, is not a relevant question under Alabama bad faith law. Instead, the issue is whether Principal Life had a debatable reason for its claim determination. Under Alabama law "*regardless of the imperfections of the [insurer's] investigation*, the existence of a debatable reason for denying the claim at the time the claim was denied defeats a bad faith failure to pay claim." *Brechbill*, 144 So. 3d at 257-258. Alabama is clear that bad judgment or negligence is insufficient to support bad faith claims. *Singleton v. State Farm Fire & Cas. Co.*, 928 So. 2d 280, 286-87 (Ala. 2005) (noting that while strict compliance with claims manual under the circumstances could indicate bad judgment or negligence, more than that is required in a bad faith action.") Given these considerations, Plaintiff cannot demonstrate that Parker's testimony about alleged violations of industry standards not yet adopted by lawmakers in Alabama will somehow be helpful to the jury in deciding whether Principal Life engaged in bad faith in denying Plaintiff's RO Rider benefit claim. *See Smith v. Allstate Ins. Co.,*

912 F. Supp. 2d 242, 251-252 (W.D. Pa. 2012) (quoting prior case law for the proposition that a bad faith case is not a malpractice case in which the insurer's conduct would be judged by standards of the insurance industry).[1]

While Plaintiff will argue that Parker's testimony is relevant on the issue of bad faith, jurors do not need a putative expert to tell them what to think about something that is not "beyond the understanding of the average lay person." *See Tardiff v. Geico Indem. Co.*, 481 Fed. Appx 584, 587, 2012 WL 2924042, *2 (11th Cir. 2012) (holding that district court did not abuse its discretion in concluding that insurance consultant's testimony regarding industry standards would not have been helpful to the jury in deciding whether insurer breached its duty of good faith); *see also Thompson v. State Farm Fire & Cas. Co.*, 34 F.3d 932 (10th Cir. 1994) (holding that expert testimony on insurance industry standards was properly excluded and that jurors were capable of assessing for themselves whether an insurer's conduct rose to the level of bad faith); *North Am. Specialty Ins. Co. v. Britt Paulk Ins. Agency, Inc.*, 579 F.3d 1106, 1112 (10th Cir. 2009) (affirming exclusion of expert witness on insurance industry practices because "the jury was fully capable of deciding t[he] case without expert testimony."). Parker's opinions should be precluded because

---

[1] Parker's testimony concerning industry standards or the standard of care is particularly irrelevant and unhelpful in Alabama where the Alabama Supreme Court has expressly rejected recognizing a claim for negligent or even wanton handling of insurance claims. *Kervin v. Southern Guaranty Ins. Co.*, 667 So. 2d 704, 706 (Ala. 1995).

such testimony offers nothing more than her unqualified opinions on alleged industry standards and whether Principal Life lived up to them. This is precisely the sort of testimony that was excluded in *Tardiff*, *supra*, and it should be excluded here for the same reason. Simply put, expert testimony as to what Principal Life did or did not do during its evaluation of Plaintiff's claim does not "concern[] matters that are beyond the understanding of the average lay person," especially after the Court has instructed the jury on the applicable law governing bad faith. *See United States v. Frazier*, 387 F.3d 1244, 1259, 1262 (11th Cir. 2004) (en banc).

Not only would Parker's opinions not be helpful to the jury, its admission would confuse the jurors, contrary to Rule 403. Under Federal Rule of Evidence 403, this court should exclude Parker's testimony because its potential to confuse the issues far outweighs its *de minimis* probative value. Because Parker discusses the irrelevant NAIC standards—which have no legal bearing on the outcome of this case—her opinions are likely to confuse the issues.[2] For instance, a juror may

---

[2] Aside from the fact that Alabama has not adopted the NAIC, the model act itself provides that "nothing herein shall be construed to create or imply a private cause of action for violations of this Act." NAIC, Section 1, "Purpose." In its drafting notes, the NAIC states that, "[a] jurisdiction choosing to provide for a private right of action should consider a different statutory scheme. This Act is inherently inconsistent with a private right of action." *Id*. Thus, had the NAIC been adopted, violations of the NAIC would not provide a basis for a bad faith claim. Further, and separate and apart from the NAIC, Alabama claims handling regulations make clear that "evidence of a violation of this chapter and the provisions contained herein . . .shall not be utilized for any other purpose or admissible as evidence in any civil or criminal proceeding." ALA. CODE 482-1-124-.02. Thus, to allow Parker to testify concerning violations of "industry standards" based on the Model Act would, in turn, allow Plaintiff to pursue a private cause of action for bad faith based on an alleged violation of the Model Act when its standards: (1) have not been adopted in Alabama; (2) expressly state that violations do not create private rights of action; and (3) equate to a "negligence

reasonably wonder whether Alabama has truly not adopted the Model Act, whether the Act is actual law, and how the Act bears on the case at hand. Because the NAIC has no legal significance to the present case, it is easy to see how a juror might be confused about its relevance and accord this portion of Parker's testimony undue weight. Thus, the risk that Parker's testimony will confuse the jury far outweighs any probative value Parker's testimony provides. As a result, her testimony should be excluded pursuant to Rule 403.

Rather than attempting to assist the trier of fact in coming to its own conclusion about the evidence, Parker supplants her opinion for that of the jury, and further intertwines her opinions with improper legal conclusions. See Ex. A at pp. . As the Eleventh Circuit has recognized, "expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers can argue in closing arguments." *Frazier*, 387 F.3d at 1262-63. In one case, the court excluded an expert's report based on this principle, reasoning that the expert's opinion was "basically a recapitulation, or summary, of all the events of this case, and her opinions [were] nothing more than her interpretation of the . . . evidence and events." *Garcia v. Metropolitan Life Ins. Co.*, 859 F. Supp. 1229, 1232 (D. N.M. 2012). Similarly here, Parker's opinions vaguely criticize Principal Life's claims handling

---

standard" contrary to Alabama law which provides that negligence in claims handling cannot rise to the level of bad faith, and will not support recovery of bad faith damages.

based on her summarization of documents in the claim file. *See, e.g.* Ex. A at "Claim File Summary" at pp. 3-12, and "Analysis" at pp. 21-28. Parker's summary of claim file events is "cumulative and unnecessary to elucidate" the factual issues to be tried. *See Hibiscus Assocs. Ltd. v. Board of Trustees of Policemen and Firemen Ret. Sys.*, 50 F.3d 908, 917 (11th Cir. 1995) (finding that expert's testimony was cumulative and unnecessary to clarify factual issues, and exclusion of the testimony was proper). As a result, Parker's cumulative testimony concerning factual events from the claim file should be precluded.

In addition to Parker's cumulative summary of the claim file documents, Parker attempts to draw conclusions about Principal Life's subjective intent during the claims process. For example, Parker speculates that Principal Life "never intended to consider Dr. Lemons' Regular Occupation . . . and/or pay any benefits under the Regular Occupation Rider." Ex. A at p. 22. Parker improperly speculates that, "[h]ad Principal any intention of fully, fairly, and objectively evaluating [Plaintiff's] claim, [Plaintiff] would not have been misled . . ." Ex. A at 23. Yet, she admits that she cannot actually know Principal Life's intent. Ex. B at 77:8-22. In any event, such testimony is improper, and the law is clear that expert testimony cannot contain statements about a party's motive or intent. *DePaepe v. Gen. Motors Corp.*, 141 F.3d 715, 720 (7th Cir. 1998); *In Re Fosamax Prod. Liab. Litig.*, 645 F. Supp. 2d 164, 192 (S.D.N.Y. 2009) (excluding expert testimony speculating about one's

"knowledge, motivations, intent, state of mind, or purposes"). As such, courts have recognized that experts "have not been capable of testifying as to the mental [processes] of any company or its employees." *Sassafras Enterprises, Inc. v. Roshco*, 915 F. Supp. 1, 8 (N.D. Ill. 1996).

Instead of assisting the trier of fact, Parker's testimony has far greater potential to confuse the jury and detract from the central legal and factual issues in the case. Given this risk, and considering Parker's lack of expertise on the subject matter at issue, Parker's opinions and testimony concerning Principal Life's alleged intent or motivation are inadmissible, and should be excluded. For the same reasons, Parker's speculation as to Plaintiff's intent in purchasing the Policy at issue is similarly impermissible. *See* Ex. A at 38 (referring to Plaintiff's intent in specifically purchasing the RO Rider in order to insure his earnings, as well as the occupational duties specific to an OB-GYN).

## CONCLUSION

Parker lacks the requisite expertise to opine on the discrete issues in this case, which turn on Principal Life's evaluation of Plaintiff's individual disability claim under the RO Rider. Even assuming Parker is qualified, her opinions concerning Principal Life's alleged violations of an inapplicable model act serve no relevant or legitimate purpose, and risk confusing the jury. In addition, Parker's attempts to opine on issues of bad faith and the parties' intent improperly invade the province

of the jury. Accordingly, Principal Life respectfully requests that its motion to exclude Parker's opinion and testimony be granted.

Respectfully submitted on this the 28th day of May 2021.

>/s/ *Grace Robinson Murphy*
>Michael D. Mulvaney
>Grace Robinson Murphy
>Ashlee D. Riopka
>*Attorneys for Defendant*
>*Principal Life Insurance Company*

**OF COUNSEL:**
MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North, Suite 1700
Birmingham, Alabama 35203-2618
Tel.: (205) 254-1000
Fax: (205) 254-1999
mmulvaney@maynardcooper.com
gmurphy@maynardcooper.com
ariopka@maynardcooper.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 28th, 2021, a true and correct copy of the foregoing has been filed with the Clerk of Courts using the CM/ECF system, which will send notification of such filing to the following CM/ECF participants:

>Thomas O. Sinclair
>Lee P. Fernon, Jr.
>Sinclair Law Firm, LLC
>2000 Southbridge Parkway
>Suite 601
>Birmingham, AL 35209
>tsinclair@sinclairlawfirm.com
>lfernon@sinclairlawfirm.com

>*Attorneys for Plaintiff*

>>*/s/ Grace Robinson Murphy*
>>OF COUNSEL