# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| WILLIAM A. LEMONS, JR., M.D., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action: 2:18-CV-1040-CLM |
| | ) |
| PRINCIPAL LIFE INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

## PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY OF DEBRA CONNER

Thomas O. Sinclair
Lee P. Fernon, Jr.
Sinclair Law Firm, LLC
2000 SouthBridge Parkway
Suite 601
Birmingham, AL 35209
T:  205.868.0818
F:  205.868.0894
E:  tsinclair@sinclairlawfirm.com
E:  lfernon@sinclairlawfirm.com

**ATTORNEYS FOR PLAINTIFF**

The Court should exclude any testimony from Defendant's expert attorney, Debra Conner ("Conner"), because it fails to meet the requirements of expert testimony, fails essentially every metric used to evaluate expert testimony, and violates a number of evidentiary rules.

## I.     Conner's Report

Conner's report is a collection of impermissible opinions and conclusions, and her deposition confirmed many of her conclusions have no basis in fact or law whatsoever. <u>Exhibit 1</u>, Conner Report. It is unclear ***any*** of the opinions she offers can properly be admitted under the various rules that apply to expert testimony. Her opinion consists of the following:

**A. Vague, unsupported legal opinions:**

    **1)**  as to what is "controlling" law in Alabama,

    **2)**  that federal law mandates that health care providers keep and retain CPT codes for a minimum of 7 years, and

    **3)**  that federal tax law required Dr. Lemons to retain CPT code information for 3 years from the date of filing any return (3/20/20 here).  *Id.* at 20.

**B. Summary conclusions based upon misstatements of fact:**

    **1)**  baselessly asserting the Alabama Board of Medicine recommends retaining CPT codes for a minimum of ten years. *Id.*

1

    **2)** what the record evidence does or does not show, such as opining Ralston "was transparent in all of her communications with Dr. Lemons whereas at the onset he was determined not to provide CPT codes to Principal Life." *Id.* at 21.

    **3)** Dr. Lemons's state of mind,[1]

    **4)** what the medical evidence shows concerning Dr. Lemons's date of disability. *Id.* at 21.

    **5)** Whether the NAIC standards are relevant and applicable to Principal's conduct. *Passim*.

  **C. Improper legal conclusions as to ultimate legal and factual issues:**

    **1)** The interpretation of "regular occupation." *Id.* at 21-22.

    **2)** Dr. Lemons's failure to provide "proof of loss." *Id.* at 22.

    **3)** Interpretation of the term "material and substantial duty." *Id.*

    **4)** The correct interpretations of "just prior" and "prior earnings."

    **5)** Principal Life made "an appropriate decision as to the nature of Dr. Lemons' Regular Occupation," *Id.* at 23.

    **6)** "The Regular Occupation Rider was not triggered in this case and the claim was appropriately adjudicated under the policy definition of Disability

---

[1] *DePaepe v. Gen. Motors Corp.*, 141 F.3d 715, 720 (7th Cir. 1998) (holding that expert would have to speculate and therefore could not testify "as an expert" to a particular statement of mind); *Pods Enters., Inc. v. U-Haul Int'l, Inc.*, 2014 WL 12628606, at *2 (M.D. Fla. July 7, 2014) (rejecting expert testimony as improper opinions on state of mind); *Sassafras Enters., Inc. v. Roshco*, 915 F. Supp. 1, 8 (N.D. Ill. 1996).

which takes into consideration loss of earnings if you are able to work part-time in your Regular Occupation." *Id.*

      **7)** Dr. Lemons failure to take advantage of the "10-day examination offer"[2] and the legal consequences thereof. *Id.* at 24.

      **8)** Opining who had the "burden of proof" with respect to Dr. Lemons's claim. *Id.* at 25.

      **9)** "Principal Life reached the correct decision on Dr. Lemons' disability claim after conducting a full, fair and thorough analysis." *Id.* at 27.

      **D. Offering patently irrelevant conclusions that only confuse the jury**:

      **1)** Opining Dr. Lemons was not disabled from opening a business and "making a decision to rent or purchase a colposcope." *Id.* at 22.

      **2)** Offering what appear to be purely layperson conclusions about the department of insurance materials from California, Iowa, and Alabama and making sweeping conclusions as to all of Principal's activities therefrom. *Id.* at 25-26.

      **3)** Offering a subjective credibility assessment of Hanselman's explanation of his access to reserves that doesn't even bother to address Principal's affirmative misrepresentations on this precise topic. *Id.* at 26; *see also* ECF 75 p. 36, n. 34. The remainder is simply argument that Principal's counsel can make without an "expert."

---

[2] This is pure legal argument.

### E. Offering expert opinions on topics she has no qualifications for:

**1)** Physicians' use of CPT codes and "today's medical practice environment," *Id.* at 22, 26.

**2)** Tax law, and

**3)** Dr. Lemons's medical condition.

Hare's report fails to provide any bases for her conclusions beyond her experience, and her deposition testimony confirmed many of the statements contained in her opinion were fabricated from whole cloth.

## II. Standard

As the party offering Conner as an expert, Principal bears the burden of proving her testimony is admissible as expert testimony. Under Federal Rule of Evidence 702, "expert testimony must be both reliable and relevant." *Umana-Fowler v. NCL (Bah.) Ltd.*, 49 F. Supp. 3d 1120, 1121 (S.D. Fla. 2014) (citing *U.S. v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004)). The party offering the evidence has the burden to show that: 1) the expert is qualified due to having knowledge, skill, experience, training or education in the field of said testimony; 2) such testimony will assist the trier of fact to understand evidence or determine a fact in issue; 3) the testimony is based on sufficient facts or data; 4) the testimony is the product of reliable principles and methods; and, 5) the witness reliably applies the

4

principles and methods to the facts of the case. FED. R. EVID. 702; FED. R. EVID. 104(a); *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 588 (1993).

Expert testimony "can be both powerful and quite misleading because of the difficulty in evaluating it." *Daubert*, 509 U.S. at 595 (quoting Jack B. Weinstein, Rule 702 of the Federal Rules of Evidence is Sound; It Should Not Be Amended, 138 F.R.D. 631, 632 (1991)). "Indeed, no other kind of witness is free to opine about a complicated matter without any firsthand knowledge of the facts in the case, and based upon otherwise inadmissible hearsay if the facts or data are 'of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject.'" *Frazier*, 387 F.3d at 1260.

"Because of the powerful and potentially misleading effect of expert evidence, . . . sometimes expert opinions that otherwise meet the admissibility requirements may still be excluded by applying Rule 403." *Frazier*, 387 F.3d at 1263. "The judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than over lay witnesses." *Id.*; *see also U.S. v. Stevens*, 935 F.2d 1380, 1399 (3d Cir. 1991).

**III.   Conner is not Qualified to Provide Much of Her Opinions**

Conner's expert qualifications derive *entirely* from her work in the insurance industry and her law degree. She has offered no basis for being qualified to render

5

opinions concerning CPT codes, the Alabama Board of Medicine, tax law, Dr. Lemons's medical condition,[3] or many of the other topics she has opined upon.

> If the witness is relying solely or primarily on experience, then the witness must explain ***how*** that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply "taking the expert's word for it."

Fed. R. Evid. 702 (2000 notes) (emphasis added); *Frazier*, 387 F.3d at 1261.

## IV. Conner's Testimony Will Not be Helpful

Expert opinion testimony is admissible only insofar as it assists the trier of fact to resolve a fact in issue. *Daubert, Inc.*, 509 U.S. at 592. "Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Frazier*, 387 F.3d at 1262-63; *Garcia v. Metro. Life Ins. Co.*, 859 F. Supp. 1229, 1232 (D. N.M. 2012). Conner's report is simply a rehash of what Principal's lawyers will argue during their cross-examinations of plaintiff's experts and during closing. Similarly, much of her opinion is not "beyond the understanding and experience of the average citizen." *U.S. v. Rouco*, 765 F.2d 983, 995 (11th Cir. 1985).

Conner's attempts to opine on issues such as the correct interpretation of contract terms, credibility, and ultimate factual questions are also prohibited. *See*

---

[3] *E.g.*, ECF 66-48, Conner Dep. 66:1-24 (acknowledging she has no pertinent qualifications).

*e.g.*, *supra* pp. 2-3, § D. An expert may not "merely tell the jury what result to reach . . . [or] testify to the legal implications of conduct; the court must be the jury's only source of law." *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990). Accordingly, bare legal conclusion is not admissible as expert opinion testimony. *Id.* Moreover, expert testimony that is based on an erroneous legal standard is unhelpful to the jury and irrelevant (e.g. her contractual interpretations that contradict the Court's ruling). *Williamson Oil Co. v. Philip Morris USA,* 346 F.3d 1287, 1322, 1323 (11th Cir. 2003).

## V. Conner's Testimony is Not Based on Sufficient Facts or Data

Conner's opinion derives entirely from her "experience," and her deposition confirmed many of her assertions have no factual or legal basis whatsoever. Fed. R. Evid. 702)(b) (requiring sufficient facts or data). For example, Conner could not identify any facts or data to support her opinions that 1) federal law requires keeping CPT codes, ECF 66-48, Conner Dep., 53:13-55:4, 2) the Alabama Board of Medicine recommends retaining CPT codes for 10 years, *id.* at 55:11-57:7, 3) federal tax laws require retaining CPT codes, *id.* at 57:8-60:3, and 4) the language of this policy is consistent with other disability policies, *id.* at 75:10-77:8. *See Bradley v. Miller*, 878 So. 2d 262, 266 (Ala. 2003) ("The opinions of an expert may not rest on mere speculation and conjecture"). Nothing in *Daubert* or the Federal Rules of Evidence permits a district court to admit evidence connecting to

7

existing data that is "only by the *ipse dixit* of the expert." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 157 (1999). Conner's testimony is unreliable, irrelevant, and inadmissible under Rule 702. *See Daubert*, 509 U.S. at 590.

**VI.   Conner's Opinion Is Not the Product of Reliable Principles and Methods**

Even if the Court determines she is qualified, Conner's opinion is also due to be excluded because she fails to offer any insight that permits assessment of the reliability of the principles and methods she used to arrive at her summary conclusions. "If admissibility could be established merely by the *ipse dixit* of an admittedly qualified expert, the reliability prong would be, for all practical purposes, subsumed by the qualification prong." *Frazier*, 387 F.3d at 1261. "[T]he unremarkable observation that an expert may be qualified by experience does not mean that experience, standing alone, is a sufficient foundation for rendering" reliable opinions. *Id*. Reliability "remains a discrete, independent, and important requirement for admissibility." *Id*.

The following non-exhaustive factors are typically used to assess the reliability of reasoning and methodology: "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community." *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333,

1341 (11th Cir. 2003). Although originally tailored to scientific opinions, these are also "used to evaluate the reliability of non-scientific, experience-based testimony" such as Conner's. *Frazier*, 387 F.3d at 1262. As the Supreme Court explained:

> In certain cases, it will be appropriate for the trial judge to ask, for example, how often an engineering expert's experience-based methodology has produced erroneous results, or whether such a method is generally accepted in the relevant engineering community. Likewise, it will at times be useful to ask even of a witness whose expertise is based purely on experience, say, a perfume tester able to distinguish among 140 odors at a sniff, whether his preparation is of a kind that others in the field would recognize as acceptable.

*Kumho*, 526 U.S. at 152. Conner's *ipse dixit* report offers no answers to any of *Daubert*'s four reliability criteria. Thus, Principal and Conner have failed to meet any of their burdens for introducing this testimony under Fed. R. Evid. 702(c).

Further, as discussed in the previous section, Conner's inability to provide ***any*** specificity or explanation regarding the factual or legal bases for many of her opinions renders her testimony unreliable. Indeed, Conner was unable to explain her methodology or set out *any principles* that guided her analysis. ECF 66-48, Conner Dep. 24:4-15, 26:15-27:23.

## VII. Conner Does Not Reliably Apply the Principles and Methods to the Facts

Given Conner was unable to offer any insight as to the methods and principles used to reach her conclusions, there is no basis for concluding she reliably *applied* those unknown methods and her opinion fails to meet FRE

9

702(d)'s burdens. Despite these deficiencies, it is plain Conner's conclusions cannot possibly be the result of *reliably* applying anything to the facts of this case.

For example, the bulk of Conner's opinion is devoted to her legal conclusion that the NAIC's model rules are not "controlling" in Alabama. ECF 66-48, Conner Dep. 52:11-23. This repeated criticism is meant to somehow undercut the opinion provided by Plaintiff's expert, Laura Parker, but Conner never makes any attempt to set out what standards ***would*** "control" here because filling this hole in Conner's opinion would require the citations to caselaw provided by Justice Harwood. ECF 113, pp. 2-5. Regardless, Conner's constant criticism on this point serves no legitimate purpose given 1) the man who drafted Principal's claims manual testified Principal's claims handling standards were based upon the NAIC's Model Rules[4] and that Principal "must abide" the NAIC's rules and 2) Conner conceded these rules have been industry standards "forever."

> **Q. Is it your opinion that the NAIC's model rules unfairly prohibit any claims practices?**
> A. I don't know what you just asked me. I don't understand the question.
>
> **Q. Sure. Do you disagree with any of the substance in the NAIC's Model Unfair Claims Settlement Practices Act?**
> A. Do I personally agree or disagree with the Model Act?
>
> **Q. Well --**
> A. I personally have no problem with the NAIC Model Act. We -- it has been around forever and it's been used forever in claims departments.

---

[4] ECF 66-30, Hanselman Dep. 100:5-101:1, 209:16-212:24.

> **Q. As a matter of fact, I think Mr. Hanselman testified it was used by him in drafting the claims manual for Principal. Did you see that testimony?**
> A. Yes, I did. And that -- yes, that would be expected.
>
> **Q. That would be in compliance with industry standards, right?**
> A. Perhaps.

ECF 66-48, Conner Dep. 49:5-25; *see also id* at 45:12-25 (testifying the NAIC rules should have been used in **her own analysis** of Principal's conduct).

Further, Conner's representations concerning CPT codes are apparently outright fabrications, and she could not point to *anything* in support of the logical leaps she made to attack Dr. Lemons on this topic.[5] *See Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1293 n.7 (11th Cir. 2005) ("In evaluating the reliability of an expert's method, however, a district court may properly consider whether the expert's methodology has been contrived to reach a particular result."). *Finestone v. Fla. Power & Light Co.*, 272 F. App'x 761, 768 (11th Cir. 2008) (recognizing *Daubert's* condemnation of a "[methodologically] unsupported leap of faith.").

## VIII. Conner's Opinion Has Minimal Probative Value and Is Highly Prejudicial

Conner's testimony is also due to be excluded because "its probative value is substantially outweighed by . . . unfair prejudice." Fed. R. Evid. 403; *Frazier*, 387 F.3d at 1263 ("[E]xpert testimony may be assigned talismanic significance in the

---

[5] *See supra* p. 8-9. To the extent it ever existed, this information was required as part of her report; her deposition testimony just underlined her opinion's total lack of reliability and methodology.

11

eyes of jurors, and, therefore, the district courts must take care to weigh the value of such evidence against its potential to mislead or confuse."). As described above, Conner's testimony is grossly prejudicial because it is an attempt to make an end-run around the FRE 404 and the rules governing hearsay.

> Because of the powerful and potentially misleading effect of expert evidence sometimes expert opinions that otherwise meet the admissibility requirements may still be excluded by applying Rule 403. Exclusion under Rule 403 is appropriate if the probative value of otherwise admissible evidence is substantially outweighed by its potential to confuse or mislead the jury, or if the expert testimony is cumulative or needlessly time consuming.

*Frazier*, 387 F.3d at 1263.

The already considerable prejudice caused by permitting Conner's testimony is magnified by the Court's prior *Daubert* ruling regarding Plaintiff's rebuttal expert, Justice Harwood, and the arguments Principal used to successfully exclude his opinion. ECF 121, 103. As discussed above, Conner's entire report is made up of legal opinions, such as what is or is not "controlling" in Alabama, what various federal laws require concerning CPT codes, that Principal "correctly" decided the claim, that Principal correctly interpreted numerous policy provisions,[6] Lemons's

---

[6] For example, Conner opines on the interpretation of terms such as "regular occupation," "just prior," and "prior earnings," sometimes in ways that contradict what is now the law of the case.

12

"proof of loss,"[7] and the legal effect of the 10-day examination offer.[8]

Principal retained the "expert" opinions of two attorneys whose expertise is primarily derived from their legal experience and whose opinions consist of naked legal argument. Then, it attacked Plaintiff's experts because they were not Alabama attorneys. Using Principal's view, Justice Harwood's opinion was the only possible rebuttal to the few substantive assertions that can be divined from Principal's expert reports, particularly Conner's repeated discussion as to what is "controlling" concerning insurer conduct in Alabama.[9] Nevertheless, Principal then reversed its position and argued Justice Harwood's opinion, which merely filled in the holes in Principal's opinions, must be excluded. The Court agreed and excluded Harwood's testimony, so fairness requires the same result for Conner.

While this is by no means exhaustive, the following portions of Principal's motion to exclude Harwood's testimony must apply equally to exclude Conner's:

> Contractual interpretation issues, and determinations regarding whether a genuine material issue of fact exists, are issues of law for this Court to decide, not [Principal's] "expert" witness.

---

[7] Conner helpfully confirmed that proof of loss is a legal question (i.e., one that the jury wouldn't even decide). ECF 66-48, Conner Dep. 63:4-7. As discussed in other briefing, 1) Principal waived this argument entirely and 2) there is no factual basis for asserting Dr. Lemons failed to provide the proof of loss set out in the policy.

[8] Principal has never attempted to advance this frivolous argument (which necessarily requires Dr. Lemons to have been aware that Principal would change how it interpreted these terms 5 years **later** when it created the 700 Series) and it is too late to do so now. Thus, it is unclear how this particular opinion could possibly be relevant to anything at issue to be decided by the jury.

[9] As discussed previously, Conner conceded this was a legal opinion and she failed to ever actually identify the "controlling" standards, which derive entirely from the caselaw set out in Harwood's opinion. *E.g.*, ECF 66-48, Conner Dep. 52:11-23, 37:23-38:5, 39:20-24.

> ECF 103 p. 3.
>
> However, expert testimony does not assist the trier of fact when it attempts to usurp the role of the jury. *Haas v. Abrahamson*, 705 F. Supp. 1370, 1375 (E.D. Wis. 1989). [Conner's] testimony seeks to perform this precise function of taking the ultimate decision of liability from the jury.
>
> *Id.* at 5.
>
> When broken down, [Conner's] opinions consist primarily of veiled instructions to the judge or jury as to what [she] believes the law to be. And merely directing the trier of fact to reach a certain conclusion does not *assist* them in their determination.
>
> *Id.* at 6.
>
> As noted above, at several points Harwood offers conclusions about the law and how it ought to be applied. Even more revealing is his deposition testimony, in which Harwood admitted that he was asked by Plaintiff's counsel to "among other things, review those reports [from two of Defendant's experts] and see if [he] disagreed with any of their conclusions or findings."
>
> *Id.* at 7.
>
> Simply put, legal conclusions such as the ones [Conner] offers have no place in the courtroom. Cloaking [Conner's] advice as "expert" testimony does nothing to diminish the fact that [her] testimony serves no purpose other than to expound strictly prohibited legal opinions.
>
> *Id.* at 9.
>
> Similarly, [Conner's] instructions concerning how to interpret contractual terms cannot be admitted. Moreover, [Conner] cannot offer an "expert" opinion about whether an insurer complied with the scope of its duties in an insurance contract.
>
> *Id.* (citations omitted).

14

> [Conner] is not permitted to instruct the judge or jury about how contracts are interpreted and what constitutes an ambiguous term, as [she] does through [her] opinions.

*Id.* at 10.

> Furthermore, setting aside the bare legal conclusions and contract interpretation that comprise [Conner's] opinions, there is little substance containing any probative value. What remains are [Conner's] subjective perceptions and cognitive illusions as to the evidence at issue, and her speculation as to Plaintiff's presumed intent . . .[10]

*Id.* at 13.

> [Conner's] testimony serves no legitimate purpose. For example, the court in *Smith v. Allstate* held that the expert's "opinions on contract construction . . . although derivative of [her] experience in the insurance industry, are not based upon reliable scientific methodology as required under the Federal Rules of Evidence." *Smith*, 912 F. Supp. 2d at 253. . . . Like the expert in *Smith*, [Conner] offers nothing of substance in [her] opinions aside from [her] own legal inferences and interpretation of the case. As such, [s]he relies on no reliable methodology, nor does [s]he assist the trier of fact (or the Court in resolving the parties pending motions for summary judgment)

*Id.* at 14.

As discussed above, Conner's testimony is due to be excluded for a large number of reasons, many of which have come straight from Principal's mouth. To the extent she is permitted to testify, Plaintiff respectfully requests that Justice Harwood be permitted to offer his purely rebuttal testimony.

---

[10] Conner's "expert" opinion that "**at the onset [Dr. Lemons] was determined not to provide CPT codes to Principal Life**" is a particularly egregious example of Conner doing far worse than anything Principal complained of for Harwood. Ex. 1, Conner Report p. 21 (bold in original).

15

        Respectfully submitted,

        <u>/s/  Thomas O. Sinclair</u>
        Thomas O. Sinclair
        Lee P. Fernon, Jr.
        Sinclair Law Firm, LLC
        2000 SouthBridge Parkway
        Suite 601
        Birmingham, AL 35209
        T:  205.868.0818
        F:  205.868.0894
        E:  tsinclair@sinclairlawfirm.com
        E:  lfernon@sinclairlawfirm.com

        **ATTORNEYS FOR PLAINTIFF**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the above and foregoing has been served on all counsel of record via the Court's ECF system on May 28, 2021.

        <u>/s/  Thomas O. Sinclair</u>
        Of Counsel