# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| WILLIAM A. LEMONS, JR., M.D., | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| PRINCIPAL LIFE INSURANCE COMPANY, | ) CASE NO. 2:18-CV-1040-CLM ) ) |
| Defendant. | ) ) ) |

## DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY OF DEBRA CONNER

Michael D. Mulvaney
Grace R. Murphy
Ashlee D. Riopka
MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North
Suite 1700
Birmingham, AL 35203-2602
Telephone: (205) 254-1000
Facsimile: (205) 254-1999
mmulvaney@maynardcooper.com
gmurphy@maynardcooper.com
ariopka@maynardcooper.com
*Attorneys for Defendant*

05991543.3

Defendant Principal Life Insurance Company ("PLIC" or "Defendant") respectfully responds in opposition to Plaintiff William A. Lemons, Jr. M.D.'s Motion to Exclude Expert Testimony of Debra Conner (the "Motion"). (Doc. 158).

## **INTRODUCTION**

Debra Conner, J.D. ("Ms. Conner") is certainly qualified and able to provide helpful insight to the jury on the issues of industry standards, customs, and practices within the individual disability insurance industry. Ms. Conner has over **four decades** of experience working in the insurance industry in legal, compliance, and claims department roles. (Doc. 158-1 at 3). She is precisely the type of expert that can provide helpful testimony to a jury that will be tasked with evaluating PLIC's review and investigation of Plaintiff's claim for total disability benefits. Her anticipated testimony will address (and rebut) the purported expert opinions of Laura Parker, and her testimony is based on her background, training and experience in the insurance industry, and review of key documents and testimony. Plaintiff cannot claim that Ms. Conner's opinions are unreliable or unhelpful, while inconsistently arguing that Ms. Parker's opinions are. Stated differently, to the extent Ms. Parker's opinions are remotely "helpful," so too are Ms. Conner's.

Plaintiff's Motion is devoid of substance, and rests largely on conclusory arguments, which are sandwiched in between inflammatory accusations and bare recitations to legal principles. *See, e.g.* (Doc. 158 at 12) (describing Ms. Conner's

opinions as "outright fabrications," and "logical leaps"). These hollow efforts do not justify excluding Ms. Conner's well-supported opinions.

## STANDARD OF REVIEW

Expert evidence requires a three-part inquiry into whether "(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *Pledger v. Reliance Tr. Co.*, No. 1:15-CV-4444-MHC, 2020 WL 6101409, at *5 (N.D. Ga. Jan. 24, 2020) (quoting *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004)).

## ARGUMENT

I.  **No Portion of Debra Conner's Report or Testimony Should be Excluded.**

    A.  **Ms. Conner is Imminently Qualified.**

Plaintiff advances several red herrings in an attempt to discredit Ms. Conner's qualifications. For example, he objects to Ms. Conner's qualifications in terms of her purported ability to opine as to "the Alabama Board of Medicine, tax

law, [and] Dr. Lemons'[] medical condition." (Doc. 158 at 7).[1] His position is misleading, however, because Ms. Conner does not speak to these specific topics in a vacuum; rather, these topics, when referenced, are addressed in order to provide a factual foundation for Ms. Conner's actual opinions, each of which is well within her expertise in the disability insurance industry. And, to the extent referenced, these categories of information simply serve to provide proper context for the jury in understanding industry norms and expectations in obtaining information to evaluate individual disability claims.

Plaintiff's Motion does not appear to contest that Ms. Conner is qualified to offer testimony as to disability insurance claims handling practices and standards (the issues upon which she actually opines). Ms. Conner is a lawyer who has worked in the insurance industry for more than 40 years. (Doc. 158-1 at 3). She is uniquely qualified to explain to the jury the intricacies of handling a disability claim. In her most recent position, Ms. Conner served as the Vice President of Life and Disability Claims for Sun Life Financial. (Doc. 158-1 at 3). In this role, she was responsible for overseeing thousands of disability insurance claims, in addition to working with the audit department to ensure that proper training and controls

---

[1] Plaintiff also objects to Ms. Conner's ability to provide testimony regarding the use of Current Procedural Terminology ("CPT") codes in reviewing a claim for individual disability benefits. This position is absurd, and, as explained further below, there is no question Ms. Conner is qualified to address the type of information used in the disability insurance industry to evaluate and validate an insured's occupation just prior to disability.

were in place for "life and accidental death insurance claims, short term disability claims and the oversight of 20,000 open long-term disability claims with an average of 800 new long-term disability notices received each month." *Id*.

Prior to her position with Sun Life Financial, Ms. Conner served as in-house counsel for another major insurer for nearly a decade, during which she managed and oversaw litigation associated with individual disability policies. *Id*. Ms. Conner also has six years of experience working in the area of insurance policy compliance and policy drafting within the group disability context, during which time she was charged with interpreting state and federal laws impacting insureds. *Id*.[2] Ms. Conner has handled almost every type of life, disability, cancer, and medical claims in compliance, contract, and legal roles. *Id.* at 4. In addition, Ms. Conner was active in the national insurance industry, rising to become president of the New England Claims Association. *Id*. Ms. Conner's rare experience, training, and education is invaluable for a case such as this one. Accordingly, there is no real contest that the first part of the *Daubert* analysis is met.

### B. Ms. Conner's Opinions are Reliable, Based on Undisputed Facts, and Helpful.

---

[2] While Ms. Conner's report sets out her background, training, and expertise in the individual disability insurance industry, a copy of Ms. Conner's Curriculum Vitae ("CV") is attached here as Exhibit A, and further demonstrates her qualifications. The CV was produced to Plaintiff in response to a subpoena for documents to Conner, but was omitted as an exhibit to Plaintiff's Motion.

Here, there is no question that Ms. Conner's opinions are reliably based on undisputed facts and guided by her expert understanding of insurance industry standards, norms, and customs.[3] Ms. Conner's opinions are not premised on *ipse dixit*, as Plaintiff contends. Throughout her opinions, Ms. Conner consistently refers to industry standards and customs in reviewing individual disability income claims, which she is qualified to provide testimony on considering her extensive training, background, and experience in the disability insurance industry. *See, e.g.* (Doc. 158-1 at 3-4 and 20-26). As such, Plaintiff's argument that Ms. Conner's opinions are not based on "any principles" or methodology is disingenuous. Plaintiff's argument that Ms. Conner's opinions have no factual foundation is similarly misleading. Before providing her opinions, and throughout her opinions, Ms. Conner makes clear reference to undisputed facts, as plainly documented in the claim file or established through undisputed, sworn witness testimony. *See* (Doc. 158-1 at 5) (providing comprehensive list of thousands of pages of documentary evidence and sworn testimony which Ms. Conner reviewed prior to providing her opinions).

---

[3] Although *Daubert* sets out certain factors to apply when considering scientific expert testimony, the court has the discretion to determine the applicability of those factors where, as in this case, the testimony is not purely scientific. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). In such instances – including bad faith failure to investigate cases – the *Daubert* factors should be considered only to the extent they are relevant to the subject of the testimony. *Id.*

Under the second part of the *Daubert* analysis, the Court must ensure that the proposed testimony is relevant. Here, the proposed testimony of Ms. Conner is not scientific, but is still relevant to the issues in front of the jury. The Court's role is to determine whether her testimony will assist the jury, and if so, it is admissible. *See* F.R.E. 702(a) ("expert testimony may be permitted if 'the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue . . . .'"). Plaintiff does not dispute that expert testimony, such as Ms. Conner's, which pertains to insurance industry standards and practices in a case involving a claim for bad faith failure to investigate is admissible.[4] Instead, Plaintiff attempts to exclude Ms. Conner's opinions and anticipated testimony through mischaracterizations, and his argument that her opinions are merely a "rehash" of what PLIC's lawyers could argue at trial. This is not true, and Plaintiff fails to single out any particular opinion which he contends is a "rehash" of lawyer arguments.

---

[4] In order to make this argument, Plaintiff would essentially have to challenge the admissibility of his own experts, Laura Parker and Elliott Flood, both of whom are not nearly as qualified as Ms. Conner who has both legal and practical IDI claims experience. Unlike Ms. Parker, Ms. Conner has actual experience with similar policies, has devoted her career to the disability insurance space, is trained as a lawyer, and has background in drafting and interpreting disability policies. And, unlike Mr. Flood, Ms. Conner has actually worked with a compliance department to ensure proper controls with respect to disability insurance claims handling. By comparison, Mr. Flood's compliance experience is limited to his former work with a legislatively created entity and insurer of last resort for employers acquiring *workers' compensation* coverage in Texas. (Doc. 154-2, Depo. of E. Flood, at 34:18-36:19).

Contrary to Plaintiff's arguments, Ms. Conner's opinions do not attempt to instruct the jury on the law, or tell the jury what results to reach. Nor are the opinions "entirely made up of legal opinions," and "naked legal argument" as Plaintiff claims. (Doc. 158 at 13-14). Ms. Conner's opinions apply four decades of insurance industry experience to the facts of this case to help the jury understand norms, practices, common understandings, and policies within the disability insurance industry. As set forth below, Ms. Conner's opinions at issue in Plaintiff's Motion provide more than sufficient information about her conclusions and their bases to comply with Rule 26.[5]

Initial Claims Handling (Doc. 158-1 at 20), Reconsideration Process (*id*. at 25), & Summary (*id*. at 27).[6]

Ms. Conner's testimony provides helpful insight with respect to PLIC's initial review, and its reconsideration of the claim, and how PLIC conducted itself in accordance with industry standards and norms. Such testimony does not constitute improper legal conclusions, and – rather than misstating the law – Ms. Conner's testimony is couched in terms of typical industry practices, rather than an inapplicable model act (the NAIC) that has not been adopted into law in Alabama.

---

[6] Plaintiff provides snippets from this part of Ms. Conner's opinion and argues that they are vague, unsupported legal opinions or improper legal conclusions on ultimate legal and factual issues. (Doc. 158 at 2-3 and 5, I(A)2-3, I(B)1-2, and I(E)(1)-(2)).

To the extent Ms. Parker is permitted to misstate the law, and suggest that the NAIC has been codified by the Alabama Legislature, Ms. Conner's rebuttal should be permitted in order to avoid confusing the jury, and to set the record straight.

Ms. Conner details industry requirements with respect to who is responsible for obtaining and submitting proof of loss during the claims process, and the documentation necessary from a claimant for an insurer to render a determination (*i.e.*, CPT codes).[7] This is information jurors would not know otherwise. The Court will instruct the jury about the burden of proof at trial, but the burden during the administrative process is a separate matter where Ms. Conner's expertise is helpful (and is not a "vague, unsupported" legal opinion). To the extent Plaintiff is challenging Ms. Conner's opinion as to what the claim documentation indicated[8], such a challenge is not a proper basis for excluding Ms. Conner's testimony, and goes to its weight, not its admissibility.

The Date of Disability (Doc. 158-1 at 21).

---

[7] Ms. Conner's discussion regarding CPT codes and laws mandating that certain records be kept (records which directly impact Plaintiff's ability to provide sufficient proof of loss to PLIC and, in turn, impact PLIC's review) provide helpful context which can help the jury understand what types of documentation can serve as proof of loss, and why such documentation is important. Plaintiff's position that any discussion of CPT codes is improper makes no sense. Amy Ralston's sworn testimony, and PLIC's claims handling guide/manual (upon which Plaintiff's expert, Laura Parker, comments), confirm the use of CPT codes as information which can be used to validate an insured's occupation. *See, e.g.* (Ex. 10 to Def's Response in Opposition to Pltf's Mot. for Summ. Judg., filed under seal, and bates-labeled Principal/Lemons – CONFIDENTIAL – 50952-5954); (Doc. 72-33, Ralston Dep., 175:24-176:6).
[8] *See* Plaintiff's argument at (Doc. 158 at 3, I(B)(2)).

Based on her review of the Policy and claim file documentation, and taking into account her years of experience within the insurance industry in which she both reviewed claims and interpreted and applied policy language, Ms. Conner notes that the claim file documentation indicates a July 15, 2016 disability onset date. (Doc. 158-1 at 21). Plaintiff's sole challenge to this particular statement is his contention that it misstates a fact. *See* (Doc. 158-1 at 3, I(B)(4)). Yet, Plaintiff fails to further elaborate, and glosses over all of the undisputed facts, as documented in the claim file, upon which Ms. Conner is clearly referring to. *See, e.g.* (Doc. 72-5 at 174-176).[9] Plaintiff cannot demonstrate that this opinion is misleading, either, because it is **in accordance with Plaintiff's own statements as to his date of disability**. *See* (Doc. 72-6 at 76-77); (Doc. 72-6 at 85-86).

<u>Determination of Regular Occupation</u> (Doc. 158-1 at 21-22)

A lay juror is unlikely to know the industry's expectations for the purpose of a disability policy. Ms. Conner can help in that regard. Ms. Conner's expert knowledge and experience handling claims and interpreting and applying insurance policies will inform the fact finder as to typical practice within the disability insurance industry in offering disability policies (similar to the Policy at issue), and the industry norm that such policies do not contemplate a specific

---

[9] This citation refers to the March 2016 treatment notes from Dr. Paul Atchison which document that Plaintiff's symptoms "did not cause functional impairment at present."

05991543.3          9

vocation or specialty.¹⁰ *See* (Doc. 158-1 at 21) ("An individual disability policy is designed to protect one's income at the time of disability."). Tellingly, Plaintiff's own expert did not disagree with Ms. Conner on this point. (Doc. 88-6 at 72:19-73:17).

Ms. Conner does not interpret the "Regular Occupation" Rider; rather, she offers her opinion as to how similar terms are typically understood within the industry, and clarifies that, when evaluating an insured's occupation just prior to disability, information regarding what an insured is doing for work, and to earn income is taken into account. (Doc. 158-1 at 21). This is hardly controversial, and Plaintiff's own expert agrees.¹¹ *See* (Doc. 88-6 at 83:7-9).¹²

To the extent Plaintiff is permitted to introduce underwriting materials (which PLIC maintains are irrelevant and inadmissible), the testimony of Ms. Conner would assist the jury in understanding the difference between reviewing claims under individual disability policies (and what materials are referred to)

---

¹⁰ Ms. Conner does not attempt to supplant the Court's role in interpreting the Policy; rather, she cites to language in the Policy, and opines on how certain language is typically understood within the industry in order to provide the jurors will helpful industry-specific norms. This is especially important considering Ms. Parker's confusing opinions which attempt to conflate the information used to determine the amount of "Loss of Earnings" benefits under the Policy with the types of proof of loss which are standard in the industry when looking at what an insured was doing "just prior to" the disability onset date. (Doc. 158-1 at 21-22).

¹¹ While Ms. Conner's testimony, in certain instances, refer to Policy language verbatim, this is done in order to provide context and proper foundation for her opinions.

¹² While Plaintiff also takes issue with Ms. Conner's statement that Plaintiff was "apparently not disabled from engaging in the substantial activities of trying to get his business up and running," this statement is factually undisputed. *Id.*

versus coding and other non-applicable issues pertaining to underwriting policies prior to issuance. None of these opinions reach an impermissible legal conclusion. Rather, such opinions apply four decades of insurance industry experience to the facts of this case to help the jury understand the facts regarding the claims handling process and what information is considered important to that process. Whether or not PLIC's conduct in reviewing Plaintiff's claim was malicious or intentional is up to the jury. Ms. Conner's testimony, however, will assist the jury in deciphering the intricacies of Plaintiff's RO Rider claim, and what the industry standard and norms would be for reviewing such a claim, and whether PLIC's investigation complied with industry standards. *See Hibbett Patient Care, LLC v. Pharmacists Mutual Ins. Co.*, 2017 WL 2062955, *3 (S.D. Ala. May 12, 2017) (denying motion to strike expert's opinion regarding the reasonableness and thoroughness of the defendant insurance company's investigation and claims handling procedures utilized with respect to the claim at issue, relative to standard industry practices).

While Plaintiff contends that Ms. Conner's opinion goes too far, her opinions regarding PLIC's compliance with industry standards, norms, and duties of the insurer are permissible expert testimony territory in the Eleventh Circuit. *See, e.g. Camacho v. Nationwide Mut. Ins. Co.*, 13 F. Supp. 3d 1343, 1366 (N.D. Ga. 2014) ("An insurance expert may testify regarding what duties are owed by an

insurance company during the claims handling process and whether the actions of the insurance company complied with those duties without offering improper legal conclusions.") (collecting cases); *Rosen v. Protective Life Ins. Co.*, 817 F. Supp. 2d 1357, 1385 (N.D. Ga. 2011).[13]

Use of Marketing Materials (Doc. 158-1 at 22-24)

Contrary to Plaintiff's arguments, Ms. Conner's discussion of the Policy's 10-day examination period, and her statement that Plaintiff "apparently did not" take advantage of the 10-day examination period is not an improper legal opinion, as Plaintiff contends. There is nothing legal about it. Rather, Ms. Conner is addressing an undisputed fact, confirmed through Plaintiff's <u>own</u> deposition testimony. (Doc. 72-18 at 9 (100:1-6)). This fact is not a "frivolous argument," as Plaintiff contends; nor is it irrelevant. *See* (Doc. 158-1 at 14, n. 8). If the Court permits Plaintiff to introduce evidence and argument relating to alleged "marketing" materials[14], Ms. Conner's opinions will be helpful to the jury (and

---

[13] *See also Garcia v. GEICO General Ins. Co.*, 807 F.3d 1228 (11th Cir. 2015) (reversing judgment of bad faith against insurer because trial court had abused its discretion by refusing to allow the insurer's expert witness to testify that, based upon the then existing case law, at the time the insurer denied coverage, the insurer could reasonably have believed that its denial was correct).

[14] The alleged "marketing" materials Plaintiff seeks to introduce into evidence include materials falling into one or more of the following categories: materials that were not provided to Plaintiff; materials upon which Plaintiff did not rely; materials which are not incorporated as part of the Policy/do not govern the parties' relationship; materials related to other policies; materials allegedly used to train producers; and materials used during initial underwriting which are not used to advertise or market policies and which are not considered in interpreting policy language or evaluating claims.

Plaintiff cannot argue otherwise). Ms. Conner's opines that it is not industry standard to review marketing materials in connection with an individual disability claim. This opinion is not something a juror would know, and will assist in evaluating the significance (or lack thereof) of marketing materials in reviewing a individual disability insurance claim. The undisputed fact that Plaintiff did not take advantage of the 10-day examination period (and thus did not contest the language in the Policy as issued to him based on alleged marketing materials), helps put her opinion into specific context.

Market Conduct[15] (Doc. 158-1 at 22-24)

Although market conduct materials will likely not be an issue at trial, Ms. Conner's opinions about them is in line with what courts expect of experts—to provide specialized knowledge and industry experience which, in turn, will help the jurors to understand that PLIC's claims handling is consistent with industry customs and norms. This opinion is not a lay opinion or conclusion as to an ultimate issue, and is necessary to rebut Mr. Flood testimony regarding "systemic" claims handling issues (to the extent Mr. Flood's testimony is not excluded).

---

[15] Plaintiff provides snippets from this part of Ms. Conner's opinion and argues they are improper legal conclusions on ultimate legal and factual issues. (Doc. 158 at 3-4, I(C)(7)). Plaintiff also contends that Ms. Conner's opinion under this section of her report is irrelevant. (Doc. 158 at 14, n. 8). In doing so, he claims PLIC has never addressed the 10-day examination period in the Policy, and Plaintiff's failure to take action during the 10-day examination period. This is grossly inaccurate. *See* (Doc. 91 at p. 23).

Miscellaneous Comments (Doc. 158-1 at 26)

Plaintiff's only argument regarding this portion of Ms. Conner's anticipated testimony is that she improperly offers an irrelevant and confusing "credibility assessment of Mr. Hanselman's explanation of his access to reserves." (Doc. 158 at 4, I(D)(3)). This argument does not square with Ms. Conner's actual opinions and anticipated testimony. At bottom, Plaintiff's argument seeks to keep out proper expert evidence that directly refutes the factually inaccurate testimony of Laura Parker. (Doc. 158-1 at 26). If the Court precludes evidence and argument as to reserves (given, among other objections, its irrelevance, as noted in the Special Master's Report and Recommendation, adopted by this Court)[16], this portion of Ms. Conner's opinions will likely not be an issue. However, if such evidence comes in (and Parker's testimony is not excluded), Ms. Conner's rebuttal testimony is entirely proper, and will not confuse the jurors, who will then have the benefit of Ms. Conner's clarification based on the undisputed evidence.

### C. Ms. Conner's Opinions are Not Unfairly Prejudicial.

Lastly, Plaintiff argues that the admission of Ms. Conner's expert opinions would result in "considerable prejudice," because they are hearsay. However, whether evidence is hearsay is a matter separate and apart from F.R.E. 403, and hearsay is not at issue because Plaintiff deposed Ms. Conner who certified her

---

[16] (Doc. 45 at pp. 8-9); (Doc. 55).

opinions under oath. (Doc. 66-48, 13:6-14:22). At bottom, Plaintiff appears to argue that, if Ms. Conner is permitted to testify, he will suffer prejudice because he can no longer counter with the rebuttal testimony of Justice Bernard Harwood (who the Court properly excluded given his blatant legal opinions). However, the impropriety of Mr. Harwood's opinions does not render Ms. Conner's expert opinions inadmissible.[17] As such, Plaintiff's myopic attempt to wholesale adopt and apply PLIC's well-supported arguments opposing Mr. Harwood as a basis for opposing Ms. Conner is misguided.

## **CONCLUSION**

Based on the foregoing, Plaintiff's Motion should be denied, and Ms. Conner should be permitted to testify and provide expert opinions.

Respectfully submitted this 11th day of June, 2021.

      /s/ *Michael Douglas Mulvaney*
      Michael Douglas Mulvaney
      Grace Robinson Murphy
      Ashlee D. Riopka
      MAYNARD, COOPER & GALE, P.C.
      1901 Sixth Avenue North, Suite 1700

---

[17] Plaintiff advances a number of inconsistent and mutually exclusive attacks on Ms. Conner's opinions, none of which advance the ball in favor of excluding her opinions. For example, on one hand, Plaintiff's Motion attempts to project all of the failings of Harwood's blanket legal opinions onto Ms. Conner's opinions. Yet, on the other hand, Plaintiff's Motion appears to argue that Ms. Conner's opinions are somehow unreliable because they do not include legal conclusions. (Doc. 158 at 10). Such arguments are a self-serving Catch-22, and should be disregarded.

05991543.3             15

Birmingham, AL 35203-2618  
Telephone: 205-254-1000  
Fax: 205-254-1999  
[mmulvaney@maynardcooper.com](mailto:mmulvaney@maynardcooper.com)  
[gmurphy@maynardcooper.com](mailto:gmurphy@maynardcooper.com)  
[ariopka@maynardcooper.com](mailto:ariopka@maynardcooper.com)

# CERTIFICATE OF SERVICE

I hereby certify that on June 11, 2021, a true and correct copy of the foregoing has been filed with the Clerk of Courts using the CM/ECF system, which will send notification of such filing to the following CM/ECF participants:

>Thomas O. Sinclair
>Lee P. Fernon, Jr.
>Sinclair Law Firm, LLC
>2000 Southbridge Parkway
>Suite 601
>Birmingham, AL 35209
>tsinclair@sinclairlawfirm.com
>lfernon@sinclairlawfirm.com
>
>*Attorneys for Plaintiff*

>*/s/ Michael D. Mulvaney*
>OF COUNSEL