FILED
2021 Jun-18 PM 04:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| WILLIAM A. LEMONS, JR., M.D., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action: 2:18-CV-1040-CLM |
| | ) |
| PRINCIPAL LIFE INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

## PLAINTIFF'S REPLY IN SUPPORT OF HIS MOTION TO EXCLUDE EXPERT TESTIMONY OF DEBRA CONNER

Thomas O. Sinclair
Lee P. Fernon, Jr.
Sinclair Law Firm, LLC
2000 SouthBridge Parkway
Suite 601
Birmingham, AL 35209
T: 205.868.0818
F: 205.868.0894
E: tsinclair@sinclairlawfirm.com
E: lfernon@sinclairlawfirm.com

**ATTORNEYS FOR PLAINTIFF**

Plaintiff's *Daubert* Motion specifically identified a very large number of impermissible "expert" opinions in Conner's report and explained in detail why her opinions are unreliable and why they also run afoul of FRE 403. Principal's Response essentially ignored everything in that Motion, so Principal necessarily failed to carry any of its burdens as the proponent of Conner's testimony. Instead, Principal essentially argued that Conner's qualifications are so profound that the reliability of her opinions can be ignored. This position requires ignoring binding caselaw, the substance of the opinions actually being offered, and common sense.

**I.     Conner's Qualifications**

At least half of Principal's brief is devoted to reciting Conner's qualifications or arguing that those qualifications somehow make her opinions reliable. However, "[i]f admissibility could be established merely by the *ipse dixit* of an admittedly qualified expert, the reliability prong would be, for all practical purposes, subsumed by the qualification prong." *U.S. v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004). The Response's inordinate focus on Conner's insurance qualifications is particularly conspicuous given Principal acknowledged this topic was never disputed in the *Daubert* Motion. ECF 176 p. 3.

Despite the numbers of times the Response beat the qualification drum, it never offered any basis for concluding that Conner was qualified to opine upon

physician's use of CPT[1] codes and "today's medical practice environment," tax law, or Dr. Lemons's medical condition. Given Conner conceded she has no qualifications in these areas during her testimony and the fact that Principal was unable to offer anything beyond naked contrarianism, nothing has been done to satisfy Principal's burdens and Conner's opinions in these areas must be excluded.

## II. Conner's Opinions Are Not Relevant

As set out in the Motion, Conner's opinions concerning Dr. Lemons's ability to open a business, department of insurance materials, her subjective credibility assessments of Hanselman, and her fabricated legal opinions (e.g., unidentified tax laws or federal "health care" laws) are all irrelevant. Principal's Response failed to explain how any of this testimony could be considered relevant or address relevancy at all. Instead, Principal presented argument about the admissibility of insurance industry/bad faith experts in general, something **only** Principal has disputed to date. *E.g.,* ECF 153 pp. 10-11. This is the latest in a very long line of 180s and mutually exclusive positions taken by Principal in this action, and we can only hope this means it will stop wasting time with contrarian arguments on this issue going forward. To be clear, Plaintiff's *Daubert* motion was never based upon

---

[1] There is an entire industry devoted to CPT coding, and persons who deal in this area are typically certified to do so and referred to as "medical coders." A large portion of physicians do not understand this process and rely on coders to complete these duties. This is also an area that courts in this Circuit have held requires expertise. *E.g., Allstate Ins. Co. v. Vizcay*, 2013 WL 12157568, at *2 (M.D. Fla. Mar. 26, 2013). As confirmed in Conner's deposition, CPT codes have nothing to do with disability insurance, and she has no qualifications in this area whatsoever.

3

industry or bad faith experts in general, it was clearly based on the glaring defects of the specific opinion offered in this case by this particular expert. Regardless, none of this has anything to do with the relevance of the opinions listed above.

**III.   Conner's Opinions Are Not Helpful to the Jury**

As set out in the Motion, Conner's report primarily consists of opinions that cannot possibly be helpful to the jury, such as: 1) her myriad legal opinions as to a) what is "controlling" law in Alabama, b) unnamed (made up) federal health care laws, c) unnamed (made up) tax laws, d) her interpretation of numerous terms in this policy, e) her ultimate legal conclusions, f) the 10-day examination offer, and g) the Parties' burdens of proof; 2) her unsupported (made up) opinions about the Alabama Board of Medicine's requirements; 3) Dr. Lemons's state of mind; 4) her subjective credibility assessment of Hanselman's testimony; 5) her logical leaps concerning department of insurance materials; 6) her layperson characterizations, such as her discussion of Ralston's transparency; and 7) her medical opinions. With the few minor exceptions discussed next, Principal's response to all of this was either "nuh-uh" or nonexistent.

Contrary to what is claimed in Principal's Response, Conner's opinion goes far beyond merely opining that the NAIC is not "controlling" in Alabama. The NAIC is a topic that has been discussed exhaustively, and its relevance is not genuinely disputed. Indeed, its relevance for assessing Principal's conduct was

expressly conceded in Principal's own deposition testimony **and Conner's**. Regardless, Parker has never offered an opinion that the NAIC is "controlling" in Alabama, so Principal's justification for Conner's opinion is a non-issue. ECF 176 p. 8. Even if Parker *did* offer such testimony, Principal's disagreement with this testimony would be addressed via defense counsel's cross-examination and impeachment. There is no legitimate basis for an expert to testify on what the law[2] is here, because, as Principal pointed out a year ago, the courtroom is already equipped with someone to do that (the judge).

Seemingly well-aware of the impropriety of Conner's legal opinions and conclusions, Principal attempts to spin many of those opinions as being non-legal. For instance, Principal argues that Conner's proof of loss and burden[3] opinions are somehow based upon "industry requirements" rather than the law. ECF 176 p. 8. First, Conner conceded proof of loss was a legal question. Exhibit 1, Conner Dep. 63:4-7; ECF 158 p. 13 n.7. Second, this legal question is one that is resolved by ***looking at the specific policy "Proof of Loss" provision that explicitly controls this legal question***. The notion that the Policy provision can be ignored based upon wholly identified "industry requirements" is preposterous. Third, unlike Parker, Conner never bothers identifying a single, identifiable "industry requirement" or

---

[2] As her opinion makes obvious, Parker is testifying about industry standards, not the law.
[3] The Parties' respective burdens is obviously a legal question.

standard." This is pure *ipse dixit*, and *Daubert* and FRE 702 require demonstration that "generally accepted principles and methods" have been used by the expert to arrive at their conclusions. Fourth, Conner's proof of loss opinion directly contradicts the policy's terms and Principal's own testimony on this issue. ECF 156 pp. 2-6; ECF 173 pp. 1-4.

Similarly, Principal concedes one of Conner's primary purposes is to offer interpretative opinions regarding policy language, ECF 9-10, despite this being precisely what Principal *successfully* argued Plaintiff's rebuttal expert Justice Harwood should be excluded for. Principal's nonsensical attempt to spin this as being "typical practice" evidence showing how these specific policy terms are "typically understood" (rather than "interpreted[4]") is unavailing. This position is also characteristically irreconcilable with the positions Principal is simultaneously taking in its in limine motions. For instance, Principal argues here that it is essential for the jury to know what "the industry's" expectations are concerning interpretation of this policy's terms, yet it is simultaneously arguing Dr. Lemons must be prohibited from testifying about his own expectations on this issue ***and*** that internal Principal documents setting out its own interpretations of policy terms must be excluded. Dr. Lemons and Principal are parties to this contract; "the

---

[4] Merriam Webster defines "Interpreted" as meaning "**understood** in the light of the individual belief, judgment, or circumstance." (emphasis added).

6

industry" is not. Finally, Conner's opinion that "the industry's" interpretation[5] of the ROR indicates that Principal's interpretation was reasonable would be a misstatement of fact and a direct contradiction of the Court's ruling as a matter of law. As set out in Plaintiff's in limine briefing, this would also violate clear Alabama law on this issue. Finally, this *ipse dixit* opinion also suffers from all the above-mentioned defects concerning what is "controlling" in Alabama.

Similarly, Conner's vague opinion regarding the 10-day examination offer suffers from the same defects as those above, and it would inherently require disputing the Court's interpretation ruling. Conner's report infers that Dr. Lemons did something wrong, yet doesn't even bother explaining what she is opining the ultimate consequence of all this is. Rule 26's reporting requirements mean this deficiency alone is fatal to her 10-day opinion. Further, AIG's attempt to explain that opinion confirms it is intended solely to confuse the jury on a straightforward issue. Since his first conversation with Ralston, Dr. Lemons has **consistently** stated that **all** of these are identical in their description of the policy's terms: the plain meaning of the policy terms, the manner it was explained and sold to him, and

---

[5] As set out in the dispositive briefing, Conner's unsupported claims that "the industry" would interpret the specific ROR language at issue in the way Principal did are controverted by actual evidence (e.g., the chart setting out the various terms used by disability insurers at the time). ECF 78-2, attached as <u>Exhibit 2</u>. Dr. Lemons's policy was sold. Further, every court to address this specific language unanimously ruled that it could only reasonably be interpreted as referring a singular regular occupation.

Principal's internal documents[6] concerning its own contemporaneous interpretation of this policy's ROR terms. Thus, there was nothing to put him on notice that there was any 10-day issue. To the extent Principal believes there is an inconsistency here ***and*** that this inconsistency obligated Dr. Lemons to do something, Principal must actually identify and explain its position.[7] Conner's vague, inadmissible opinion is not a substitute.

The only remaining helpfulness issue from the large list above addressed by Principal's Response is Conner's credibility assessment of Hanselman's testimony regarding reserves. Conner' opinion essentially agrees with Parker that it is industry practice to segregate reserves information from claims personnel. However, Conner then goes on to 1) dispute that there is any evidence saw Dr. Lemons's reserves and 2) engage in a lengthy discussion as to why she found Hanselman's explanation for his access to reserves credible. The first is a misstatement of fact because Hanselman testified that he had access to the reserves for all pending claims and further testified that Dr. Lemons's claim would have been "pending." The second observation is inappropriate, and Principal makes no

---

[6] Principal's arguments that its own underwriting materials, claims manual, and other internal documents "were not before PLIC" at the time of its decision are preposterous. *E.g.,* ECF 174 p. 2. PLIC provided almost all of these materials, and it has unequivocally authenticated these documents, which were all created by PLIC. Regardless, this observation appears to be apropos of nothing in this case, which is not governed by ERISA.

[7] Of course, Principal has never and will never do what is necessary to support its half-formed argument because doing so would necessarily require identifying and admitting to making a misrepresentation.

attempt to explain why this is permissible expert testimony. In any event, Principal's complaints about the irrelevance of reserves is ultimately inconsequential because it is undisputed the Principal repeatedly lied under oath[8] to Plaintiff and the Court regarding Hanselman's access to reserves. This testimony goes to a large number of credibility and impeachment purposes regardless of any rulings regarding reserves.

**IV.  Conner's Report Is Not the Product of Reliable Principles and Methods**

As noted at the beginning of this brief, Principal's Response essentially ignored both of FRE 702's reliability prongs, choosing instead to offer lengthy diatribes about Conner's experience and summary conclusions as to the propriety of her opinions. To be clear all four of 702's elements are ***prerequisites***, so Principal's disregard of these issues is fatal to Conner's opinion.

The first reliability prong asks whether an expert's opinions are the product of reliable principles and methods. FRE 702(c). The Motion noted Conner was unable to identify ***any principles*** or methodology that guided her analysis, and the Response's sole attempt to address this deficiency is the following two sentences:

> Throughout her opinions, Ms. Conner consistently refers to industry standards and customs in reviewing individual disability income claims, which she is qualified to provide testimony on considering her extensive training, background, and experience in the disability insurance industry. As such, Plaintiff's argument that Ms. Conner's

---

[8] The Special Master specifically based his suggestion on those sworn representations.

opinions are not based on "any principles" or methodology is disingenuous.

ECF 176 p. 5. Stripping away Principal's irrelevant citation to her qualifications and its naked accusations of disingenuity, we are left solely with an observation that Conner's report repeatedly referred to industry standards and customs. Conner's insertion of sporadic, token references to wholly unidentified and unexplained "industry standards and customs" does not satisfy this FRE 702 burden.[9] Principal's expectation that the Court simply take this element for granted is contrary to the Federal Rules and binding caselaw. Even if this were permissible, doing so here would be particularly suspect given Conner unabashedly fabricated tax law, federal healthcare laws, and Alabama Board of Medicine requirements to support her CPT code proof of loss opinions. Her willingness to sign such an opinion necessarily calls into question the methodology, credibility, and reliability of her opinions. Regardless, Conner's *ipse dixit* opinions do not pass FRE 702 muster.

## V. Conner Does Not Reliably Apply Anything to the Facts

The second reliability prong asks whether the expert has reliably applied the principles and methods to the facts of the case. FRE 702(d). As set out in the Motion, Conner's inability to identify any standards or principles makes it

---

[9] This is a noteworthy contrast to the opinion of Parker, who specified a number of standards (e.g., the NAIC) and cited a number of additional sources for her opinions (besides just her experience).

impossible to assess this factor let alone conclude she has satisfied its requirements. Despite Conner and Principal's *per se* failure to meet this burden, Plaintiff provided two examples to illustrate why her Report's opinions could not possible the result of reliably applying anything to the facts of this case: 1) her opinions concerning the NAIC and 2) her CPT code claims.

First, Plaintiff pointed out that the bulk of Conner's report was merely a repeated assertion that the NAIC's model rules are not "controlling" in Alabama. The sole purpose of all this was to manufacture a purported defect with the opinion provided by Plaintiff's expert, Laura Parker. As pointed out in the Motion, this demonstrates the unreliability of Conner's application to the facts because Principal **and Conner** testified under oath that the NAIC model rules were relevant to assessing Principal's conduct, that it is universally accepted as a setting out the pertinent minimum standards of conduct for insurers, and that these rules *in fact* were the basis for the standards of conduct Principal created and implemented for itself. The fact that so much of Conner's opinion is devoted to inexplicably attacking Parker for her reliance on these industry-accepted standards necessary calls Conner's reliability into question. Principal's Response ignores these issues entirely.

The Motion also noted Conner's complete inability to identify what standards she *did* believe "controlled" here. This was a reference to the obvious

incompleteness of Conner's opinions (i.e., lack of methodology). Principal's only attempt to address this problem came in the form of the following two sentences in a footnote: "Plaintiff's Motion appears to argue that Ms. Conner's opinions are somehow unreliable because they do not include legal conclusions. Such arguments are a self-serving Catch-22, and should be disregarded." Principal's comment only makes sense if it is agreeing that filling in the holes left by Conner's repeated references to unidentified "controlling" standards would require legal conclusions. Principal apparently agrees with the last portion of Plaintiff's *Daubert* Motion. ECF 158 pp. 12-15.

Principal's complaint that this observation amounts to a "self-serving Catch-22" ignores the obvious. In case there was any doubt, Plaintiff did not select Conner to be an expert in this case, Plaintiff did not draft Conner's opinion which faulted Parker for relying upon industry-accepted standards because those standards were not explicitly referenced in the Alabama Supreme Court's bad faith decisions, and Plaintiff certainly has not claimed that opinion is something that should be submitted to the jury. To put another way, Conner and Principal crafted this trap themselves, and submission of an inherently defective opinion is not a Catch-22. Principal cannot submit an "expert" opinion that is focused on making baseless attacks on Parker's opinion via references to legal conclusions and then "cure" that defect by simply excising the part where Conner explains that her

attacks are based on legal conclusions. Principal could have avoided this "Catch-22" by submitting an opinion that actually complied with *Daubert* and FRE 702, but it was apparently unable to find any expert that could craft such an opinion while *also* reaching favorable conclusions about Principal's claims handling.

As discussed above, Conner's CPT code opinions are utterly without factual or legal basis. Her report failed to identify any of the "laws" or "requirements" she referenced and she could not identify ***anything*** to support her claims when asked about them under oath.[10] Principal's Response understandably makes no attempt to address these problems. The undersigned has never seen an expert make things up so brazenly, but her willingness to do so raises very serious concerns as to what she is going to start saying while up on the stand. It will be difficult to unring any bells, and the whole point of Rule 26's expert disclosure requirements is to prevent ambush. Nevertheless, Principal has argued that it can ignore the Federal Rules disclosure requirements simply by "reserving the right to do so," and its witness and exhibit list specifically indicated that she would be supplementing her opinion despite the deadline for doing so having long since passed. ECF 173 p. 10.

---

[10] *See Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1293 n.7 (11th Cir. 2005) ("In evaluating the reliability of an expert's method, however, a district court may properly consider whether the expert's methodology has been contrived to reach a particular result."). *Finestone v. Fla. Power & Light Co.*, 272 F. App'x 761, 768 (11th Cir. 2008) (recognizing *Daubert's* condemnation of a "[methodologically] unsupported leap of faith.").

13

## VI. Conner's Opinions Violate Rule 403 and the Rules Governing Hearsay

As set out in the Motion, Conner's opinion is ***also*** due to be excluded because 1) it violates the rules against hearsay and 2) its dubious probative value is substantially outweighed by its unfair prejudice and likelihood to confuse the jury. FRE 403; *Frazier*, 387 F.3d at 1263.

Principal's response sole response concerning hearsay is an assertion that Ms. Conner's opinions are not hearsay because her testimony was certified under oath.[11] To be clear, the rules against hearsay do no hinge on whether the testimony was provided under oath, which is dealt with by FRE 603. The only way Principal's statement makes sense is if it is referring to its submission of the designated portions of Conner's deposition testimony. First, as set out in his Motion to Strike, Plaintiff does not believe it is permissible for a party to submit its own expert's discovery deposition[12] Regardless, if Principal wishes to submit that designated testimony during trial, then it will independently need to pass *Daubert* and FRE 702's requirements. In essence, the designated portions of Conner's testimony are their own voir dire. ECF 167-1. Along with this Motion and Reply

---

[11] Principal offered no substantive response concerning hearsay whatsoever.
[12] This is distinguished from a trial deposition which has different rules and during which the party opponent has actual notice that it *will* be used for such a purpose (i.e., they know to ask everything possible and it is on the proponent's dime rather than the opponent's).

brief, Plaintiff's objections and counter-designations to Principal's deposition selections clearly establish that those designations cannot be deemed admissible.

Principal's only response concerning the Motion's FRE 403 arguments is an observation that exclusion of Justice Harwood's opinion does not render Conner's inadmissible. This is not a response to the Motion, which argued that Conner's opinion suffered the precise defects that Principal complained of with respect to Harwood and that consistent application of the rules required exclusion of Conner's opinion if Harwood's opinion is to remain excluded. Principal makes no attempt to distinguish any of its arguments with respect to Conner, so any opposition is deemed abandoned.

## Conclusion

For the reasons stated above, Conner's testimony should be excluded regardless of what form Principal attempts to submit it.

Respectfully submitted,

*/s/ Thomas O. Sinclair*
Thomas O. Sinclair
Lee P. Fernon, Jr.
Sinclair Law Firm, LLC
2000 SouthBridge Parkway
Suite 601
Birmingham, AL 35209
T: 205.868.0818
F: 205.868.0894

E: tsinclair@sinclairlawfirm.com
E: lfernon@sinclairlawfirm.com

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served on all counsel of record via the Court's ECF system on June 18, 2021.

/s/ *Thomas O. Sinclair*
Of Counsel