FILED
2021 Aug-09  AM 08:56
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **WILLIAM A. LEMONS**, **JR.**, **M.D.**, | ) ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:18-CV-01040-CLM** |
| | ) | |
| **PRINCIPAL LIFE INSURANCE COMPANY,** | ) ) | |
| **Defendant.** | ) | |

## ORDER

Defendant Principal Life Insurance Company has moved to exclude from trial the expert testimony of Laura B. Parker and Elliott S. Flood. *See* Docs. 153, 154. Plaintiff William Lemons has moved to exclude the expert testimony of Lynn Etheridge Hare and Debra Conner. *See* Docs. 157, 158. For the reasons explained within, the court **GRANTS IN PART** and **DENIES IN PART** Principal's motion to exclude Parker's testimony (doc. 153), Principal's motion to exclude Flood's testimony (doc. 154), and Lemons' motion to exclude Conner's testimony (doc. 158). The court **GRANTS** Lemons' motion to exclude Hare's testimony (doc. 157).

## ANALYSIS

When considering the admissibility of expert testimony, this court must act as a "gatekeeper[ ] to ensure that speculative, unreliable expert testimony does not reach the jury." *See Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010).

But this court must also keep in mind that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596 (1993). Three factors guide the court's expert admissibility inquiry:

(1)  the expert must be qualified to testify competently regarding the matters he intends to address;

(2)  the methodology by which the expert reaches his conclusions must be sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and

(3)  the testimony must assist the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*See Moore v. Intuitive Surgical, Inc.*, 995 F.3d 839, 850–51 (11th Cir. 2021). The proponent of expert testimony bears the burden of establishing these factors. *See United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc). Because Principal offers Hare and Conner as rebuttal experts to Parker and Flood, the court starts with Principal's motions to exclude Parker and Flood's testimony. The court then addresses Lemons' motions to exclude the testimony of Conner and Hare.

**A. Laura Parker:** According to Parker's expert report, she has over 25 years of experience in the disability insurance industry. From 1994 to 2000, Parker worked for UNUM in its individual disability claims department. Parker then worked as association disability claims manager for DRMS, a role that required her to help

2

implement claims processes and procedures and managing the short term disability claims team. From 2012 to 2015, Parker worked as an appeals consultant for Salt Associates. In that job, Parker provided client companies with industry best practices and appeals expertise for short term disability, long term disability, waiver of premium, life insurance, and critical illness claims. In her current job, Parker mainly provides expert testimony and outsourced claims handling and claims consultation services.

At trial, Parker plans to testify that Principal's handling of Lemons' claim for benefits under his policy's regular occupation rider ("ROR") did not comply with industry standards, including those from the National Association of Insurance Commissioners ("NAIC"). According to Principal, the court should exclude Parker's testimony because: (1) she is not qualified; (2) her testimony is not helpful; and (3) the admission of her testimony would violate Fed. R. Evid. 403.

1. Qualifications: Principal asserts that Parker lacks the qualifications to testify on the opinions expressed in her expert report because she has only generalized experience in the insurance industry and is not a vocational expert. Principal also says that Parker isn't qualified because Alabama law doesn't guide her opinions. But the court finds that this last argument goes towards the reliability of Parker's testimony, not her qualifications.

"A witness is qualified as an expert if he is the type of person who should be testifying on the matter at hand." *Moore*, 995 F.3d at 852 (emphasis omitted). Parker's years of experience in the disability insurance industry, which includes being involved in various aspects of the claims handling process, establish that Parker is the type of person who should testify on proper disability claims handling procedures.

And though Principal asserts that Parker has not worked on a regular occupation rider claim since 2000, this does not disqualify Parker from providing an opinion on how Principal evaluated Lemons' claim. Principal does not explain why general claims handling practices are different for claims for regular occupation rider benefits than other claims for disability insurance benefits. And nothing in the record suggests that there are significant differences in the claims handling procedures Parker is familiar with and the claims handling procedures that apply to claims for regular occupation rider benefits. So Principal defines the relevant field for experts on claims handling too narrowly. *See id.* at 855–56 (district court erred in finding expert with years of experience performing hysterectomies unqualified to testify about a robotically assisted hysterectomy because he had never performed one).

The court also rejects Principal's argument that because Parker is not a vocational expert she cannot testify about how Principal evaluated Lemons' vocation when denying his claim under the regular occupation rider. As Lemons notes,

4

Parker's testimony is not being offered to discredit a vocational expert's opinion or to establish what Lemons' primary vocation was. Instead, Parker plans to testify that Principal's evaluation of Lemons' claim was unreasonable because it "did absolutely no vocational analysis whatsoever." Doc. 153-2 at 27. Parker's claims handling experience qualifies her to express this opinion.

2. <u>Reliability</u>: Turning to reliability, when the expert "is relying solely or primarily on experience, then the witness must explain *how* that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Frazier*, 387 F3d at 1261. The court finds that Parker's experience makes her reliable (for admissibility purposes). As Parker's report explains, she has years of experience in claims handling, which has caused her to become familiar with the standards that typically govern the claims handling process. And Parker has used her knowledge of these standards and experience to conclude that Principal did not adequately investigate Lemons' regular occupation rider claims. So Parker's opinions meet *Daubert*'s reliability requirement.

The court also rejects Principal's argument that Parker's unfamiliarity with Alabama law makes her opinions on claims handling practices unreliable. Lemons is not offering Parker as an expert on Alabama law. Nor would it be appropriate for Parker to testify about the legal implications of Principal's conduct under Alabama

law. *See Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990). Instead, the court will instruct the jury on the Alabama law on bad-faith. And the jury will then apply the law to the evidence, including expert testimony, to make its decision. Because Parker's experience and knowledge of industry standards shows that her opinions on claims handling practices are reliable, the jury may use her testimony when considering whether Principal adequately investigated Lemons' claim.

3. <u>Helpfulness</u>: The third factor requires the court to consider whether Parker's testimony will assist the jury. Under this admissibility factor, "an expert[s] testimony is admissible if it concerns matters that are beyond the understanding of the average lay person." *Frazier*, 387 F.3d at 1262.

According to Principal, Parker's testimony isn't helpful because whether Principal complied with industry standards isn't relevant to Lemons' bad-faith claim. Instead, Principal says that what counts is whether it had a debatable reason to deny Lemons' claim. *See* Ala. Pattern Jury Instr. 20.37, element (4). But the debatable reason element is just one element of Lemons' bad-faith claim. Another element is whether Principal "had actual knowledge that there was no reasonably legitimate, arguable, or debatable reason, or intentionally or recklessly failed to determine whether there was a legitimate or arguable reason to refuse to pay the claim." Ala. Pattern Jury Instr. 20.37, element (5). And Parker's opinion that

Principal didn't fully or fairly evaluate Lemons' job duties when he became disabled tends to show that Principal either intentionally or recklessly failed to determine if it had a reason to deny Lemons' claim. So Parker's proposed testimony is relevant to Lemons' bad-faith claim.

Principal also points out that several appellate courts, including the Eleventh Circuit, have upheld excluding expert testimony on insurance industry standards because the jury could decide the bad-faith issue without hearing from an expert. *See, e.g.*, *Tardiff v. Geico Indem. Co.*, 481 F. App'x 584, 587 (11th Cir. 2012). But in affirming the exclusion of expert testimony, those courts applied a very deferential abuse of discretion standard that allows for a range of choice by the district court. *See id.* at 586–87. And as Lemons notes, the Supreme Court of Alabama has looked to expert testimony that the defendant insurer improperly read an ambiguous term and conducted an improper investigation to hold that the trial court properly submitted a bad faith claim to the jury. *See State Fire Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 315-16 (Ala. 1999). Here, the court finds it appropriate to allow Parker to give her opinion that Principal's investigation into Lemons' claim was deficient because what counts as appropriate claims handling procedures is not known to most lay people.

4. <u>Rule 403</u>: Principal finally argues that Parker's proposed testimony would violate Rule 403 because there is a danger that unfair prejudice will substantially

outweigh the testimony's probative value. According to Principal, Parker's testimony is unduly prejudicial because the NAIC standards are irrelevant, Parker intertwines her opinions with improper legal conclusions, Parker merely plans to summarize the documents in the claims file, and Parker impermissibly testifies about the intent of Principal and Lemons.

*NAIC Standards:* Though Parker's knowledge of the NAIC's standards along with her experience help establish her qualifications and the reliability of her testimony, the court agrees that allowing Parker to reference the NAIC model act or to testify that Principal violated these standards would be unduly prejudicial. The NAIC's model act states that violations of the act do not create or imply private rights of action. And Alabama's claims handling regulations, which take some standards from the model act, provide that "evidence of a violation . . . shall not be utilized for any other purpose or admissible as evidence in any civil or criminal proceeding." Ala. Admin. Code § 482-1-124-.02.

The court thus agrees with Principal that allowing Parker to testify about the NAIC's model act risks confusing the jurors and may cause them to improperly find that mere violations of the act equate to bad faith. So the court will let Parker explain her understanding of the insurance industry's standards and appropriate claims handling procedures, which may be informed by her knowledge of the NAIC's standards. But the court will not allow Parker to explicitly refer to the NAIC's rules

or to opine that Principal violated the model act's requirements. At least one other court has similarly limited testimony about the NAIC's regulations, *see Arrowood Indem. Co. v. The Lubrizol Corp.*, 2016 WL 6634747, at *5 (N.D. Ohio Feb. 22, 2016), and the court finds it appropriate to do so here.

*Legal conclusions*: The court will also prohibit Parker from making legal conclusions, which are inappropriate for an expert to provide. So, for example, Parker cannot testify about how she believes Principal should have interpreted the regular occupation rider. But the court won't prevent Parker from testifying just because she gives her opinions in her expert report between her summary of the evidence she reviewed. Lemons has assured the court that Parker doesn't plan to read her report to the jury and summarize all evidence she reviewed. And if Principal thinks Parker's testimony is cumulative of other evidence, it may make that objection at trial.

*Intent*: Finally, the court agrees that it would be inappropriate for Parker to testify about either Principal or Lemons' intent. So Parker cannot say that Principal never intended to pay Lemons' benefits or had no intention of objectively evaluating Lemons' claim. Nor can she testify that Lemons bought the Principal policy with the intent that it would insure his job as an OB/GYN.

The court thus **GRANTS IN PART** and **DENIES IN PART** Principal's motion to exclude Parker's testimony (doc. 153). The court will allow Parker to testify but limits Parker's testimony as discussed above, particularly:

- Parker cannot testify about what the NAIC model act requires, nor can she opine that Principal violated the NAIC model act;

- Parker cannot opine about her interpretation of the regular occupation rider;

- Parker cannot opine on Principal's intent to pay or intent to objectively evaluate Lemons' ROR claim.

The court also notes that its motion in limine rulings (doc. 191) apply to Parker's testimony and that Principal can object at trial to testimony from Parker that it considers inappropriate.

**B. Elliott Flood:** Flood is a retired insurance company executive and accountant who now serves as an independent consultant. In his last position in the insurance industry, Flood served as Senior Vice President and General Auditor for an insurer that provided disability benefits through worker's compensation. According to Principal, the court should exclude Flood's testimony because he isn't qualified, his opinions aren't reliable, and his testimony won't assist the trier of fact.

1. <u>Qualifications</u>: Like with Parker, Principal argues that Flood isn't qualified because he: (a) is not an expert on Alabama law, and (b) lacks experience handling individual disability insurance claims like the Principal policy at issue. As explained above, Lemons is not offering his experts as experts on Alabama law. Instead, he is

offering them as experts on the insurance industry's standard procedures. So that Flood doesn't hold himself out as an expert on Alabama's bad-faith requirements isn't a reason to prevent him from testifying.

And again, Principal too narrowly defines the relevant field of expertise required to render an opinion on Principal's handling of Lemons' claim for regular occupation rider benefits. Principal concedes that "Flood's past work experience may qualify him as a general insurance expert 'in the abstract'" but asserts that his lack of experience with individual disability insurance claims means that he "lacks expertise regarding the specific issues in this case." Doc. 154 at 4. Principal does not, however, explain why standard claims handling procedures for individual disability insurance claims differ from the procedures used for handling workers' compensation claims or other claims for insurance benefits. The court finds that Flood's experience in examining his "company's compliance with company policies, insurance industry standards, and regulations" makes him qualified to testify about the adequacy of Principal's investigation into Lemons' claim for regular occupation rider benefits. *See id.* at 5.

2. <u>Reliability</u>: Principal asserts that Flood's testimony is unreliable because he relied on Parker's report to reach his conclusions, gets the facts wrong, and speculates that the way Principal handled Lemons' claim was "standard practice."

An expert may rely on another expert's report "[i]f experts in the particular field would reasonably rely on" the report "in forming an opinion on the subject." *See* Fed. R. Evid. 703. "An expert, however, may not simply repeat or adopt the findings of another expert without attempting to assess the validity of the opinions relied upon." *In re Polypropylene Carpet Antitrust Litig.*, 93 F. Supp. 2d 1348, 1357 (N.D. Ga. 2000). Flood states that he has "independently determined that the Parker report is based on sound methodology and accurately sourced to Company documents, identifies serious defects in internal controls over Company compliance with disability policy terms and fair claim handling practices." Doc. 66-52 at 8. According to Flood, he reached this conclusion by conducting a detailed review of Parker's report and the supporting documents she cited, the documents that he "would normally review in assessing the reliability and quality of an internal auditor's work." *Id.* at 7. The court is thus satisfied that Flood reasonably investigated Parker's findings, which are detailed in a report that the court has already determined meets *Daubert*'s reliability requirement.

And Principal's argument that Flood "gets the facts completely wrong" goes to the weight, not admissibility of his testimony. In support of this argument, Principal asserts that Flood's report incorrectly assumes that Doug Hanselman denied Lemons' request for regular occupation rider benefits and that undue targets or financial pressures may have been placed on Principal's claims department.

12

Though Hanselman denies rendering a regular occupation rider benefits determination, Lemons may introduce documentary evidence that suggests that Hanselman made the decision. *See, e.g.,* Doc. 80-8 at 2 (January 23, 2017 note signed by Hanselman: "While she was gone, I made the decision."). So this is a fact question for the jury. And though Principal asserts that a wealth of evidence contradicts Flood's view that undue financial pressure may have affected Principal's claims department, this too goes to Flood's credibility. It does not go to the admissibility of his testimony.

Principal finally contends that Flood's testimony is unreliable because Flood states that Principal likely applied the allegedly defective standards and procedures that he and Parker identified in the handling of Lemons' claims to other regular occupation rider claims. The court finds it appropriate for Flood to testify that based on his auditing experience, review of the evidence, and consideration of Parker's report he believes it is standard procedure for Principal to evaluate claims the way it evaluated Lemons' claim for regular occupation rider benefits. But Flood cannot testify that Principal has inadequately investigated ***other insureds'*** claims or underpaid them because Flood has no evidence of this. And on cross-examination Principal may point out that Flood has only reviewed Principal's handling of Lemons' claim to undermine his standard practice testimony. Depending on how Flood testifies, his testimony may also open the door for Principal to later present

evidence that it hasn't had other complaints about how it makes its regular occupation rider benefits determinations. The court, however, does not find this planned testimony to render Flood's opinion unreliable.

3. Helpfulness: Principal next argues that Flood's testimony does not help the jury because: (1) he plans to testify about how Principal should have interpreted the regular occupation rider; (2) he seeks to testify that Principal likely misstated the reserve for Lemons' claim; (3) he will testify about Principal's advertising of the regular occupation rider to Lemons; and (4) he alludes to systemic violations of fair claims handling by insurance companies in the past, specifically the Unum Multistate Market Conduct Examination.

As discussed above, the court gets to interpret the law, not experts. So the court will prohibit Flood from testifying that Principal erroneously interpreted the regular occupation rider or that Principal should have interpreted the regular occupation rider to cover Lemons' OB/GYN specialty.

Next up is Principal's argument that Flood shouldn't testify about reserves. As the special master noted in his first report and recommendation, most courts have found that information on reserves—*i.e.*, money insurance companies must set aside upon notice of potential losses under their policies—isn't relevant to first-party bad-faith claims. *See* Doc. 45. And Flood partially bases his reserve opinion on Principal allegedly applying a wrong cap on Lemons' benefits, a claim that this court has

already dismissed. Plus, although Hanselman had access to reserve information, Flood doesn't state that he believes Hanselman considered Principal's reserves when evaluating Lemons' claim. Nor does he suggest that Principal's alleged under-reserving is the reason it denied Lemons' regular occupation rider claim. So though Lemons asserts that Flood's reserves opinion shows that Principal has recklessly disregarded its legal obligations, his opinion doesn't imply that Principal's reserves motivated it to deny Lemons' claim. The court thus finds that Flood's reserves opinion isn't helpful to the trier of fact and will not let him give this opinion at trial.

The court will also prohibit Flood from testifying about Principal's alleged failure to follow reasonable expectations in advertising and from mentioning systemic violations of fair claims handling like what happened with the Unum Multistate Market Conduct Examination. Flood's testimony about how Principal marketed the regular occupation rider to Lemons again impermissibly touches upon how to interpret the regular occupation rider's language. And the court's motion in limine ruling (doc. 191 at 22) has already found that evidence related to the sale of the Principal policy is irrelevant. It is also irrelevant that the insurance industry has faced scandals involving claims handling. As the court has repeatedly noted, the insurance industry is not on trial here. Instead, this case is about one plaintiff's claim for benefits under a regular occupation rider.

The court thus **GRANTS IN PART** and **DENIES IN PART** Principal's motion to exclude Flood's testimony (doc. 154). Flood can testify at trial because he is qualified, his methods are reliable, and much of his testimony will assist the jury. But the court will limit Flood's testimony as discussed above, particularly:

- Flood cannot testify that Principal underpaid or inadequately investigated other insureds' claims;

- Flood cannot testify that Principal erroneously interpreted Lemons' regular occupation rider or that Principal should have interpreted the regular occupation rider to cover Lemons' OB/GYN specialty;

- Flood cannot testify about reserves;

- Flood cannot testify about Principal's alleged failure to follow reasonable expectations in advertising; and,

- Flood cannot testify about the industry's violations of fair claims handling.

Principal also may object to testimony from Flood that it finds improper at trial.

Though Principal doesn't raise this point, the court finally notes that if Flood plans to testify about corrective actions that Principal should take in the future, *see* doc. 66-52 at 10–11, that testimony may be irrelevant because it doesn't relate to whether Principal properly investigated Lemons' claim.

**C. Debra Conner:** To rebut the testimony of Parker and Flood, Principal offers the testimony of Debra Conner. Conner has worked in the insurance industry for the past 40 years as part of claim departments, contracts and compliance

departments, and as in-house counsel. Since 2018, Conner has provided life and disability claim/product consulting services. Lemons asserts that the court should exclude Conner's testimony because she isn't qualified, her methods aren't reliable, she won't help the jury, and her testimony is prejudicial.

1. Qualifications/reliability: Lemons doesn't dispute that Conner has the qualifications to provide expert opinions on disability insurance claims handling practices or procedures. And Conner's experience in the insurance industry shows she's an expert in this field. Lemons instead asserts that Conner isn't qualified to provide her opinions concerning the need for physicians to retain CPT codes, Alabama tax law, and Dr. Lemons' medical condition. The court agrees that Conner lacks the qualifications to state what the law mandates for retaining CPT codes or tax returns. Nor can Conner give an opinion on Lemons' medical condition. But Conner's knowledge of insurance industry standards does allow her to testify about whether it was reasonable to seek CPT codes and tax returns from Lemons when evaluating his claim. She can also testify about the affect this information would have on determining Lemons' eligibility for regular occupation rider benefits. And Conner can testify that based on the information Principal had, she believes it was reasonable for Principal to conclude that Lemons' disability onset date was July 15, 2016. Lemons' challenge of the facts that led Conner to this conclusion goes to the weight and not admissibility of her testimony.

Lemons next asserts that Conner doesn't base her opinions on sufficient facts or data and that her methods are unreliable. The court disagrees with Lemons' argument that Conner's opinions aren't the product of reliable principles and methods. Like Lemons' experts, Conner has reviewed the claims file/relevant evidence and used her knowledge of insurance industry standards to reach conclusions about whether Principal complied with industry norms. So the court finds Conner's methods reliable. And the court doesn't find Conner's opinion that the NAIC's model rules aren't controlling in Alabama to mean that she didn't reliably apply her principles and methods to the facts. As stated when discussing Parker's planned testimony, the court will not allow the experts to specifically mention the NAIC's rules or whether Principal complied with the NAIC's standards. And that Conner is aware of the NAIC's rules, familiar with other industry standards, and knows how the claims handling process works shows that her conclusions meet *Daubert*'s reliability requirement.

2. Helpfulness/prejudice: Lemons argues that Conner's testimony will not be helpful and is unduly prejudicial. According to Lemons, Conner's report is merely a rehash of what Principal's lawyers will argue and she seeks to give opinions on the correct interpretation of contract terms, credibility, and ultimate factual issues. The court doesn't find Conner's report to be merely a rehash (or pre-hash) of what Principal's lawyers will argue during closing. Instead, Conner's knowledge of

insurance industry standards and practices may help the jury determine whether Principal adequately evaluated Lemons' regular occupation rider claim. And Lemons' argument that Conner misstates the facts goes to weight, not admissibility.

But the court will prohibit Conner from testifying about how to interpret the regular occupation rider, giving legal opinions, and providing opinions on ultimate facts in issue, such as whether Principal reached the "correct decision" to deny Lemons' disability claim. This includes testifying that other insurance companies interpreted the regular occupation rider like Principal because courts in Alabama interpret insurance policies "as a reasonable person *in the insured's position* would have understood them." *See State Farm Mut. Auto Ins. Co. v. Brown*, 26 So. 3d 1167, 1169 (Ala. 2009) (emphasis added). And like Parker, the court will prohibit Conner from testifying about Lemons' state of mind.

Other testimony that Lemons objects to, such as Lemons' failure to invoke his policy's 10-day examination offer and Conner's assessment of Hanselman's access to reserves, is no longer relevant because the court has held that Lemons' experts cannot testify about how Principal sold the policy to him or the reserves. Whether Conner's testimony about insurance materials from California, Iowa, and Alabama is relevant depends on how Flood couches his opinion on Principal's standard procedures. So the court will wait until trial to see if Flood has opened the door to this testimony. And the court finds it appropriate for Conner to inform the jury that

Lemons had the burden of proof when requesting reconsideration of Principal's denial of his claim. Conner may also opine that, based on the information Lemons gave Principal, she believes that Principal could reasonably conclude that Lemons' work at Covenant was that of a business owner, not an OB/GYN—though this testimony will likely lead the court to immediately instruct the jury that bad-faith claims turn on only the information an insurer considered as part of its decisional process.

Lemons finally argues that Conner's testimony is prejudicial because it contains only legal opinions.[1] As stated, the court will prohibit Conner from giving legal opinions at trial. But not all of Conner's testimony is a legal opinion. So the court finds this argument unavailing.

Nor is the court persuaded that permitting Conner to testify is unduly prejudicial because the court has prohibited Justice Harwood from rebutting her testimony. Justice Harwood was only going to testify about how Alabama courts interpret insurance policies and Alabama's law on bad-faith. But Connor has more; the court is allowing Conner to testify whether her claims handling experience and knowledge led her to conclude that Principal complied with industry standards and

---

[1] Lemons also makes the conclusory statement that "Conner's testimony is grossly prejudicial because it is an attempt to make an end-run around the FRE 404 and rules governing hearsay." Doc. 158 at 13. But in neither his motion or reply brief does Lemons explain why Conner's testimony violates Rule 404 or the rules against hearsay. So the court will not address this argument. Lemons may make specific hearsay and Rule 404 objections to Conner's testimony at trial.

norms when investigating Lemons' claims. So while Justice Harwood's planned testimony was impermissible, certain portions of Conner's testimony is not.

The court thus **GRANTS IN PART** and **DENIES IN PART** Lemons' motion to exclude Conner's testimony (doc. 158). Although the court will allow Conner to testify, it will limit her testimony as discussed above—including but not limited to:

- Connor cannot give legal opinions, including her interpretation of Lemons' regular occupation rider and Principal's reading of it;

- Connor cannot testify how other insurance companies would read Lemons' regular occupation rider;

- Connor cannot opine on Lemons' medical condition or state of mind; and,

- Connor cannot testify about NAIC rules and standards;

**D. Lynn Hare:** The final expert is Lynn Hare, an Alabama-based insurance defense attorney who Principal offers as a rebuttal expert to Flood. According to Hare, her "law practice has had an emphasis on the evaluation of insurance practices and procedures in first party litigation, application of those practices and procedures in analyzing potential bad faith claims, as well as the defense of insurance companies in cases involving allegations of bad faith." Doc. 157-1 at 1. Hare states that she has "performed extensive research in the areas of insurance practices and procedures, including proper assessment of an insurance claim by a claims handler." *Id.* She also has (1) served as a consultant for attorneys evaluating claims handling and coverage

issues; and (2) testified in litigation "on the propriety in which a claim was adjudicated." *Id.*

Lemons makes several arguments for why the court should exclude Hare's testimony. The court agrees that Principal hasn't established that Hare has the qualifications to testify, that Hare's methods are reliable, or that Hare will assist the trier of fact. So the court won't address Lemons' other arguments for why the court should exclude Hare's testimony.

1. <u>Qualifications</u>: As discussed above, "[a] witness is qualified as an expert if he is the type of person who should be testifying on the matter at hand." *Moore*, 995 F.3d at 852 (emphasis omitted). The court finds that Hare's general experience as an insurance defense attorney and knowledge on the Alabama law of bad-faith doesn't make her the type of person who should testify about Principal's compliance with insurance industry standards. Unlike Parker, Flood, and Conner, Hare doesn't have experience handling disability insurance claims for an insurance company. And Principal doesn't dispute that Hare has never worked on or defended a disability insurance claim. Instead, Principal asserts that Hare has disability insurance experience because parties have hired her as an expert in disability insurance cases, including two cases within this district. But it doesn't appear that any court—or at least any judge in this district—has ruled that Hare is qualified as an expert who can testify at trial. She has merely been deposed. Doc. 157-1 at 14.

Nor does Hare's report explain what industry standards or practices she is familiar with. Contrast this with (a) Parker and Conner's reports, which reflect familiarity with the NAIC's guidelines, and (b) Flood's report, which lists examples of insurance industry literature he reads and describes how he keeps current with insurance industry requirements. Based on the facts that (a) Hare's experience mainly comes from general insurance defense work and (b) she hasn't explained what industry standards or practices she's familiar with, the court finds that Hare lacks qualifications to testify about whether Principal has complied with insurance industry standards.

2. <u>Reliability/Helpfulness</u>: Even if Hare meets the qualification requirements, the court finds that her proposed testimony is neither reliable nor helpful. As already discussed, when an expert "is relying solely or primarily on experience, then the witness must explain *how* that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Frazier*, 387 F3d at 1261. While the court can tell how the other experts' experience could lead to the conclusions they reached, the court cannot say the same thing about Hare. Hare's report says that through her "work experience, education, training, and other activities" she has "become knowledgeable about insurance industry standards and practices, particularly in the State of Alabama, including those related to the issues involved in this case." Doc. 157-1 at 1. But

Hare's report does not explain what insurance industry standards she is familiar with. Nor does she point to the sources that inform her knowledge of insurance industry norms. So the court finds that Hare hasn't established that her opinions on insurance industry standards are reliable.

Independent of its reliability determination, the court also finds that Hare's testimony is unlikely to assist the trier of fact. Proffered expert testimony generally fails this requirement "when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Frazier*, 387 F.3d at 1262–63. And here, Hare's report mainly asserts that Flood didn't adequately point to standards that support his conclusions and that the evidence doesn't support Flood or Parker's conclusions. For example, Hare alleges:

- As much as Flood bases his opinions on his accounting designation, they are useless in this case;

- Parker's conclusions are mere assumptions so the evidence does not support the opinions of Flood;

- No evidence supports Parker's interpretation of the policy language;

- Flood's opinion about claim underpayments is void of any support and he cites no industry standard to support his opinion;

- Flood's opinions stem from assumptions for which he provides no factual or evidentiary basis;

- Flood's comments about the compliance department are unsubstantiated and Flood does not provide any evidence that the

> compliance department or chief compliance officer at Principal should
> have had any involvement in interpreting policy terms.

The court recognizes that Hare is a rebuttal witness. But her testimony that the evidence doesn't support Flood's opinions isn't helpful to the jury because, again, she doesn't explain what industry standards she knows and applies.

Plus, Principal's attorneys can make the same points, based on the same facts, when they cross-examine Flood and present closing arguments. The court won't allow Principal to put a defense lawyer on the stand to make the defendant's case— just as the court wouldn't allow Lemons to call a judge to opine on the law (*i.e.*, Justice Harwood). The court finds Hare's testimony unhelpful and will **GRANT** Lemons' motion to exclude her testimony (doc. 157).

* * *

Though it does not affect the court's ruling, the court notes that excluding Hare's testimony is unlikely to prejudice Principal. First, the court's ruling limits the expert testimony that Flood can provide. So there is no longer a need to rebut Flood's interpretation of the regular occupation rider, Flood's testimony about reserves, Flood's mention of the UNUM Multistate Market Conduct Examination, or Flood's testimony about advertising materials. And the court's ruling makes clear that Flood cannot testify that Principal underpaid the claims of other insureds or inappropriately denied them regular occupation rider benefits. The court will wait to hear his testimony before deciding whether Flood has opened the door to evidence of the

complaints against Principal in Alabama and the Iowa and California market conduct examinations. This evidence then could come in through Conner, who has also reviewed this material.

Second, Principal may use Conner to rebut Parker and Flood's testimony. And finally, consistent with the limitations placed on Conner, Parker, and Flood's testimony, if the court had permitted Hare to testify, it wouldn't have allowed her to testify about how to interpret the regular occupation rider. The exclusion of Hare's testimony is thus unlikely to affect the outcome of this case.


## CONCLUSION

In summary, the court **GRANTS IN PART** and **DENIES IN PART** Principal's motion to exclude Parker's testimony (doc. 153), Principal's motion to exclude Flood's testimony (doc. 154), and Lemons' motion to exclude Conner's testimony (doc. 158). The court **GRANTS** Lemons' motion to exclude Hare's testimony (doc. 157).

**DONE** and **ORDERED** on August 9, 2021.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE